# IN THE SUPREME COURT OF TEXAS

No. 16-0786

JOHN DAVID ADAMS, PETITIONER,

v.

STARSIDE CUSTOM BUILDERS, LLC, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**Argued January 9, 2018**

JUSTICE BLACKLOCK delivered the opinion of the Court.

This is an appeal from the denial of a motion to dismiss under the Texas Citizens Participation Act (TCPA). The defendant, John Adams, moved to dismiss the defamation claim filed against him. The court of appeals affirmed the denial of the motion to dismiss, holding that Adams's allegedly defamatory communications did not relate to a "matter of public concern." Because we conclude that the challenged communications do relate to a "matter of public concern" as defined by the TCPA, we reverse the court of appeals judgment and remand the case to that court for further proceedings.

## I.  Legal, Factual, and Procedural Background

### A.  The TCPA

Under the TCPA, a party may file a motion to dismiss a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech."  TEX. CIV. PRAC. & REM. CODE § 27.003(a).  A "legal action" can consist of an entire lawsuit or a single cause of action.  *Id.* § 27.001(6).  The TCPA provides its own definition of "exercise of the right of free speech."  The statutory definition is not fully coextensive with the constitutional free-speech right protected by the First Amendment to the U.S. Constitution and article I, section 8 of the Texas Constitution.  In the TCPA, the "'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern."  *Id.* § 27.001(3).  "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."  *Id.* § 27.001(1).  A "'[m]atter of public concern' includes an issue related to . . .  environmental, economic, or community well-being; . . . the government; . . . or . . . a good, product, or service in the marketplace."  *Id.* § 27.001(7).

The TCPA requires a court to "consider the pleadings and supporting and opposing affidavits" filed by the parties before ruling on a motion to dismiss.  *Id.* § 27.006(a).  The statute directs the trial court to dismiss the action "if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right of free speech."  *Id.* § 27.005(b)(1).  The court may not dismiss the claim if the non-moving party "establishes by clear and specific evidence a prima facie case for each essential element of the claim."  *Id.* § 27.005(c).  Nevertheless, the movant can still win dismissal by establishing "by a preponderance of the evidence each essential element of a valid defense to the

nonmovant's claim." *Id.* § 27.005(d). An order denying a TCPA motion to dismiss may be appealed. *Id.* § 51.014(a)(12). If the trial court does not rule on a motion to dismiss within a prescribed time, the motion is considered denied by operation of law and the moving party may appeal. *Id.* § 27.008(a).

## B. Trial Court Proceedings

This appeal is part of a long-running dispute between Adams and the developer of the neighborhood where he lives. Bentley Premier Builders, LLC (Bentley) developed the Normandy Estates subdivision in Plano, Texas. Adams and his wife own a home in the subdivision. After bankruptcy, Bentley became Starside Custom Builders, LLC (Starside), as described further below.

Starside and Adams became embroiled in an ugly dispute over a common area in the subdivision. Starside sued Adams and his wife, asserting claims for threat of imminent bodily injury and business disparagement. The petition also sought a declaratory judgment that Adams did not own any of the land that Starside alleged was a common area. Adams moved to dismiss the business disparagement claim under the TCPA. Starside then filed an amended petition that dropped the business disparagement claim and added a defamation claim.

The amended petition contained the following pertinent allegations. Starside is the developer of the Normandy Estates subdivision. Starside undertook to develop the neighborhood's common areas, including a common area adjacent to Adams's property. At the time in issue, the common area was owned by Starside but was dedicated as a common area by plat. Starside controlled the common area during this period. Starside and the Normandy Estates homeowners' association (HOA) worked together to improve the common area. These improvements benefitted

3

Starside's business because they attract future homeowners to the neighborhood. Starside's owner and CEO, Phillip Pourchot, is one of three members of the HOA board.

Adams opposed the work done by Starside and the HOA in the common area. Adams accused the HOA of clear cutting trees in violation of Plano city ordinances. On March 15, 2015, Adams sent angry texts to the HOA board and others, in which he threatened to shoot people involved in the landscaping work. Pourchot and his attorney contacted the Plano police department. Two officers visited Adams and reported that "the situation was worse than was thought." Adams claimed he owned a portion of the common area stretching from his property to a creek running through the common area.

The amended petition alleges that Adams defamed Starside in a 2014 blog and in a March 18, 2015 e-mail Adams sent to Pourchot, to the HOA president, and to others. The blog's homepage is attached to the petition. The page shows a handcuffed man with a tab stating "undisclosed felony conviction." It states the names of Sandy Golgart and Phill Pourchot, the prior owners of Bentley, allegedly implying that Pourchot is a felon. The page has a large image of the logo for "Bentley Premier Builders" and also has tabs for "unpaid creditors," "commingled funds," and "contract fraud/felony investigation." Under the Bentley logo, the page states, "How a west Plano Developer took a prime Plano location[,] a group of high end home builders[,] several hardworking subcontractors[,] a few families eager to build new homes[, and] made life miserable for all involved." The March 18 e-mail asserts that the HOA "clear cut" land and did not follow city ordinances. The e-mail alleges that Pourchot is in complete control of the HOA. The e-mail claims that Adams and Starside had an agreement in principle to sell part of the common area to

4

Adams. The petition alleged that this e-mail was sent "to the Normandy Estates Residents and builders, all of whom are members of the HOA."[1]

Adams's motion to dismiss contains the following allegations. Adams purchased his home from Bentley, Starside's predecessor. Phillip Pourchot was an owner of Bentley. Bentley filed for bankruptcy and changed its name to Starside. Starside controls the Normandy Estates HOA. Adams filed a police report because the other owner of Bentley, Sandy Golgart, had falsely attested that there were no liens on his property. In late 2014, Starside began cutting down trees and landscaping the subdivision's common area. The tree cutting was done without a city permit. Adams sent text and e-mail messages asking Starside's officers and the HOA president to stop the tree cutting. The messages prompted a visit from law enforcement. The motion attaches deposition excerpts from Pourchot, who described the blog as referencing Golgart's legal problems and connecting Pourchot to those problems.

After Starside amended its petition to assert a defamation claim rather than a business disparagement claim, Adams filed a supplemental motion to dismiss the defamation claim, incorporating his prior motion to dismiss and arguing that Starside could not establish a prima facie case to survive dismissal under the TCPA. The trial court granted the motion to dismiss the business disparagement claim. The court did not rule on the motion to dismiss the defamation claim within the statutory period, so it was denied by operation of law.

---

[1] There may be some disagreement about the recipients of the e-mail. The copy of the e-mail in the record is addressed only to Starside employee Cindy Warren, HOA President Kim Castleberry, HOA board member Marc Powell, and Pourchot.

## C. The Court of Appeals Decision

Adams appealed, arguing that the trial court should have dismissed the defamation claim under the TCPA. The court of appeals reached only the issue of whether Adams established under section 27.005(b) that his defamation claim "is based on, relates to, or is in response to [Adams's] exercise of . . . the right of free speech." TEX. CIV. PRAC. & REM. CODE § 27.005(b). The court concluded that Adams failed to meet this burden. *Adams v. Starside Custom Builders, LLC*, ___ S.W.3d ___, ___ (Tex. App.—Dallas 2016, pet. granted). The court of appeals rejected Adams's argument that statements made in the blog and the March 18, 2015 e-mail relate to Starside's services in the marketplace. The court of appeals reasoned that while "Adams asserts the statements on which Starside's defamation claim are based related to Starside's services in the marketplace," "the complained-about statements do not mention Starside at all." *Id.* at ___. The court did not reach the merits of Adams's argument that his statements related to community well-being. The court effectively found that Adams waived this argument by failing to argue it with sufficient specificity in the trial court. *Id.* at ___ n.4.

## II. Discussion

This appeal turns on our construction of the text of the TCPA, and we review issues of statutory construction *de novo*. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). We disagree with the court of appeals' conclusion that the defamation claim against Adams was not based on or related to Adams's "exercise of the right of free speech" as defined by the TCPA. We must construe the TCPA according to its text. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam); *Lippincott*, 462 S.W.3d at 509. The

6

statute assigns detailed definitions to many of the terms it employs, and we must adhere to statutory definitions. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

The TCPA casts a wide net. Among other things, it covers any legal action that is "based on, relates to, or is in response to" a party's "exercise of the right of free speech." TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b). The "exercise of the right of free speech" extends to any "communication made in connection with a matter of public concern." *Id.* § 27.001(3). Almost every imaginable form of communication, in any medium, is covered. *Id.* § 27.001(1). A matter of public concern "includes" but is not limited to "an issue related to . . . environmental, economic, or community well-being; . . . the government; . . . or . . . a good, product, or service in the marketplace." *Id.* § 27.001(7).

The alleged defamatory communications made by Adams raise "issues related to" Starside's products or services in the marketplace as a homebuilder and neighborhood developer. The 2014 blog claimed that Starside's predecessor, Bentley, "took a prime Plano location" and "made life miserable for" homebuilders, subcontractors, and home buyers. Starside alleges that the blog accused Bentley or Pourchot of not paying creditors, commingling funds, engaging in contract fraud, and failing to disclose a felony conviction. The blog advised the reader to contact attorneys for Sandy Golgart and Phill Pourchot, the owners of Bentley. While the blog is not a model of clarity, it plainly raises "issues related to" services in the marketplace by complaining about Bentley's development and management of the Normandy Estates subdivision. Allegations of "unpaid creditors," "commingled funds," and "contract fraud/felony investigation" all relate directly to Bentley's provision of homebuilding and neighborhood developing services, as does the accusation that Bentley made life miserable for contractors and home buyers.

7

The March 18, 2015 e-mail from Adams also raises "issues related to" Starside's services as a neighborhood developer. The e-mail describes an ongoing dispute between Adams and the HOA, which Adams claims was controlled by Pourchot, Starside's CEO. The dispute concerned the ownership and the landscaping of the neighborhood's common area. The amended petition alleged that Starside, as developer of the neighborhood and owner of the common area, was engaged in the business of "develop[ing] the natural beauty of the neighborhood," especially the common area, and that these efforts "directly affect its business." The e-mail's accusations therefore relate to Starside's services to the residents of Normandy Estates. One of those services was the maintenance of the disputed common areas, a service Adams claimed Starside performed illegally and in violation of Adams's property rights.

The court of appeals rejected Adams's argument that his statements related to Starside's services in the marketplace. The court reasoned that "the complained-about statements do not mention Starside at all." ___ S.W.3d at ___. Technically, that is true. But only very technically. Adams's challenged statements mention both Starside's corporate predecessor, Bentley, and Starside's CEO and owner, Pourchot. The parties do not dispute that Bentley changed its name to Starside after Bentley's bankruptcy. Starside's own petitions allege that Starside is the developer of the subdivision, which must mean that Starside considers itself the alter ego of Bentley, the company that actually developed the neighborhood. And at oral argument, Starside's counsel stated that Bentley "morphed into" Starside and that Bentley and Starside are "the same corporation." When even Starside admits that there is no practical difference between Bentley and Starside, Adams should not lose his motion to dismiss merely for conflating the two entities in his briefing.

Starside itself seems to disagree with the court of appeals' conclusion that Adams's statements did not concern Starside's services in the marketplace. Ironically, Starside must take the position that Adams's statements concern its services in the marketplace in order to maintain its claim that Adams's statements injured Starside. To establish injury flowing from Adams's allegedly defamatory statements, Starside contends in its brief that the statements "questioned Starside's fitness and ability as a luxury neighborhood developer." Starside's petitions likewise alleged that Adams's speech "caused injury to Starside's name and business reputation" and its "standing in the business community." Starside argues that the March 18 e-mail "imputes criminal behavior as it states and implies that both Starside and its CEO have violated statutes, committed a felony, and are guilty of dishonesty and underhanded business dealings." The brief later argues that Adams's claims that Starside "did not follow city ordinances on tree preservation," and in an earlier e-mail that "land was cleared without getting the appropriate permit from the City" were "likewise defamatory per se . . . . These statements concerning violation of the law clearly injured Starside in its profession as a luxury developer and builder." All of this amounts to an admission by Starside that Adams's statements relate to Starside's services in the marketplace. This admission may help Starside maintain its defamation claim, but it undermines the argument that Adams's statements did not relate to a matter of public concern under the TCPA.

The TCPA's definition of "matter of public concern" also "includes an issue related to . . . environmental, economic, or community well-being." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(B). For several reasons, Adams's alleged defamatory statements satisfy this element of the statutory definition. To begin with, the March 18 e-mail alleges that the HOA "did not follow city ordinances on tree preservation." It later describes how Adams complained "about the trees

9

being clear cut" and that "city code needed to be followed to cut down a huge area of trees." The allegation that the HOA repeatedly violated the law in caring for land that is open to the public is a matter of public concern, whether viewed as related to community well-being under section 27.001(7)(B), as related to "the government" under section 27.001(7)(C), or viewed as a matter of public concern apart from the non-exclusive statutory list. Concerns about tree cover in the neighborhood's common area are also related to "environmental" well-being under section 27.001(7)(B).

Furthermore, in the context of a small residential community like Normandy Estates, any allegation of malfeasance and criminality by the developer and the HOA likely concerns the well-being of the community as a whole. HOAs wield substantial, quasi-governmental powers in many neighborhoods. *See, e.g.*, TEX. PROP. CODE chs. 204, 209. Particularly in a planned community like Normandy Estates, an allegation of HOA misconduct is not altogether unlike an allegation of local government misconduct in a small city, which would quite plainly count as a matter of public concern under section 27.001(7)(C).

The court of appeals found that Adams failed to preserve arguments based on community or environmental well-being by failing to raise them in the trial court. ___ S.W.3d at ___ n.4. We are not convinced that Adams failed to argue community and environmental well-being in the trial court, as he expressly mentioned these concerns at the hearing on the motion to dismiss.[2] Further,

---

[2] Adams argued: "Let's go to public concern. I think this Court is on point. But the definition under 27.001 includes environmental, economic, or community well[-]being. It also includes a good product or service in the marketplace. And it appears that the cases consistent with the statute says that this is to be construed [liberally], and the cases seems to say that if — if you saw something in the marketplace, your goods or services, that is a public concern. So that's how we directly get into place." While lacking in specificity, this argument did mention environmental and community well-being.

10

the court of appeals imposed too strict a view of error preservation in this context. Rules of error preservation should not be applied so strictly as to unduly restrain appellate courts from reaching the merits of a case. Adams raised as an issue in the trial court and the court of appeals that he was entitled to dismissal under the TCPA because the defamation claim was based on his speech about a matter of public concern. He was not required on appeal or at trial to rely on precisely the same case law or statutory subpart that we now find persuasive. *See Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court."); *Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011) ("Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults.").

Moreover, the unique language of the TCPA directs courts to decide its applicability based on a holistic review of the pleadings. Section 26.006(a) provides that when considering a TCPA motion to dismiss, the court "*shall* consider the pleadings and supporting and opposing affidavits." In TCPA appeals, we have decided whether communications are matters of public concern under a *de novo* standard of review, suggesting that the determination is one of law. *ExxonMobil*, 512 S.W.3d at 899; *Lippincott*, 462 S.W.3d at 509. We have not previously cabined our TCPA analysis to the precise legal arguments or record references a moving party made to the trial court regarding the TCPA's applicability. Our focus instead has been on the pleadings and on whether, as a matter of law, they are based on or relate to a matter of public concern. "When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *see also id.* at 468 (concluding as a matter of

11

law that suicide prevention and awareness relate to health, safety, and community well-being and are therefore matters of public concern under the statute); *ExxonMobil*, 512 S.W.3d at 901 (concluding as a matter of law that private statements by movants concerning plaintiff's alleged failure to gauge a storage tank related to a matter of public concern); *Lippincott*, 462 S.W.3d at 510 (concluding as a matter of law that provision of medical services by a health care professional are matters of public concern).

In this case, a review of the pleadings and the record demonstrates that Adams's alleged defamatory communications relate to Starside's services in the marketplace and to the community and environmental well-being of the Normandy Estates subdivision. Adams was therefore exercising his "right of free speech," as defined by the TCPA, when he made the challenged communications. As a result, he was entitled to file a motion to dismiss challenging the sufficiency of Starside's defamation allegations.

* * *

We emphasize that whether Adams's colorful allegations were valid, partly valid, or completely concocted by a disgruntled resident with an axe to grind is not the question before us. Further litigation may seek those answers. The question at this stage is whether Adams's challenged statements involve a "matter of public concern" as defined by the TCPA. The allegation that a neighborhood developer and the HOA it controls have chopped down residents' trees, generally made life miserable for the residents, and engaged in unspecified other corrupt or criminal activity is of public concern for the residents of the neighborhood. It is also of concern for residents of other neighborhoods built by the developer and for people considering whether to buy homes in any of the developer's neighborhoods. If these allegations had appeared in the local

12

community newspaper instead of in an e-mail and blog post by a lone resident, few would question whether they raised a "matter of public concern." The TCPA makes no distinctions based on the identity of the speaker who claims its protections. Quite to the contrary, its stated purpose is "to encourage and safeguard the constitutional rights of persons to . . . speak freely." TEX. CIV. PRAC. & REM. CODE § 27.002. Adams indeed spoke very freely. It remains to be seen whether his statements will subject him to liability for defamation. For now, we hold only that Adams should have been allowed to test Starside's defamation claim with a motion to dismiss because his allegedly defamatory statements related to a "matter of public concern" as defined by the TCPA.

### III. Conclusion and Disposition

Because the court of appeals concluded that Adams did not satisfy his initial burden to establish the applicability of the TCPA under section 27.005(b), it did not proceed to decide whether Starside established a *prima facie* case for each essential element of its defamation claim under section 27.005(c) or whether Adams established a valid defense under section 27.005(d). We therefore remand the case to the court of appeals to make these determinations in the first instance. *See* TEX. R. APP. P. 60.2(d). The judgment of the court of appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** April 20, 2018

13