

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00220-CV

———————————————

Dr. Jesse Smith, M.D., Appellant

V.

Crestview NuV, LLC, on its own behalf and derivatively on behalf of NuVivo Bioscience Solutions, LLC, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-294454-17

Before Sudderth, C.J.; Meier and Gabriel, JJ.
Opinion by Justice Gabriel

**OPINION**

Appellant Dr. Jesse Smith, M.D. challenges the denial of his motion to dismiss appellee Crestview NuV, LLC's claim against him for "aider" liability under the Texas Securities Act (the TSA). Tex. Rev. Civ. Stat. Ann. art. 581-33.F(2) (West 2010); *see id.* art. 581-1 (West 2010). Smith argues that because Crestview's claim was based on the exercise of his rights to freely associate and to speak freely on a matter of public concern, the trial court was required to dismiss Crestview's claim against him. Even though this case involves the frequently invoked and repeatedly interpreted procedural device found in the Texas anti-SLAPP[1] statute, we now are asked, apparently for the first time, to apply it in the context of a claim for violations of the TSA. Because we conclude Crestview's pleaded claim against Smith did not allege a communication as that term is defined in the TCPA, we affirm the trial court's denial.

## I. BACKGROUND

### A. CRESTVIEW'S INVESTMENT

In 2016, Mary Armstrong approached Alan Meeker, Crestview's managing member, and proposed that Crestview invest in her company, NuVivo Bioscience Solutions, LLC (NBS). Armstrong established NBS to develop a vaginal-rejuvenation product derived from human amniotic cells. Armstrong represented to Meeker that she had manufactured prototypes of the product, that she had hired doctors at

---

[1]SLAPP is an acronym for strategic lawsuits against public participation.

Stanford University to study its safety and efficacy, that she had a sales force in place, that several surgeons had "verbally committed" to using the product, and that the product would be ready to be sold in less than 120 days. Because the product was a human-cellular or tissue-based product, Armstrong told Meeker that it would not be subject to federal drug regulations regarding testing, approval, and labeling.

Armstrong further represented to Meeker that she had been injected with the product and that it had worked as expected. Armstrong stated that Smith, a plastic surgeon in Fort Worth, had contractually agreed to be a provider of the product, and Meeker noted that Smith's name was included as a provider of the product on Armstrong's proposed website design for NBS. Crestview invested $500,000 in NBS in February 2017, wiring the money to a bank account set up for NBS.

After Armstrong stopped communicating with Crestview, Crestview demanded access to NBS's bank statements in July 2017 and discovered that Armstrong had spent almost half of Crestview's investment, much of which appeared to have been spent on Armstrong's personal expenses such as rent, "childcare" payments to her ex-husband, and payments to her mother. Armstrong also transferred significant sums from NBS's account to her and her mother's personal bank accounts. Some of Armstrong's declared business expenses were for a June 2017 trip to Las Vegas where she met Smith at a "Vegas Aesthetic Meeting." Many of the expenses from the trip

3

were listed as entertainment and meals with "clients" or "employee."[2] Crestview also discovered from a review of NBS's records that NBS had made no sales of the product.

## B. CLAIMS AGAINST ARMSTRONG AND SMITH

On September 1, 2017, Crestview, on its own behalf and derivatively on behalf of NBS, filed a verified petition against Armstrong and raised claims for fraud, fraud by nondisclosure, theft, breach of fiduciary duty, money had and received, conversion, fraudulent transfer, and violations of the TSA. Crestview also sought exemplary damages, a constructive trust on Armstrong's property and accounts traceable to Crestview's investment, a temporary injunction, and a permanent injunction.

During expedited discovery on Crestview's injunctive-relief requests, Armstrong stated at her deposition that Smith had twice injected her with the product at his medical office as a test of the product but that she did not believe Smith made any records of the procedures. Further, Armstrong stated that no other members of Smith's staff were in the procedure room at the time Smith administered the product and that she could not remember if any staff members were in the office at all. Armstrong also explained that she had hired Smith as NBS's "medical consultant" for "specifics of the product, of the treatment, of the technique and the science."

---

[2]One such "Meal" between Armstrong and Smith, which was for the stated purpose of meeting about "[p]roduct development" and "strategy," occurred at a well-known strip club.

4

Crestview deposed Smith, but he refused to answer any questions about the tests he had performed on the product or on Armstrong, citing medical-privacy laws.[3] Smith did state that he had spent between twelve and twenty hours consulting with Armstrong about the product, including the logistics of testing the product, distribution of the product, and other "modalities of treatment."

On October 11, 2017, the trial court signed an agreed temporary restraining order, enjoining most financial activities for or on behalf of NBS absent an accountant's approval. The order further gave Armstrong until January 31, 2018, to purchase Crestview's interest in NBS for $600,000.

After the purchase did not occur, Crestview amended its petition on March 2, 2018, to add Smith as a named defendant to its claim for violations of the TSA.[4] Crestview alleged that Smith violated the TSA as an aider to Armstrong:

> Smith is liable as an aider under TSA article 581-33(F)(2) because he had a general awareness of his role in Armstrong's conduct in violation of the TSA, rendered substantial assistance in furtherance of Armstrong's conduct in violation of the TSA, and either intended to deceive Crestview or acted with reckless disregard for the truth of Armstrong's representations. Among other things, Smith provided assistance to Armstrong by conducting clandestine "testing" of the product. Smith clearly knew his purported "testing" of the product was improper. Indeed, he failed to keep any medical records with respect to any patients he injected with [NBS]'s product, which, in itself, is a violation

---

[3]On appeal, Smith now asserts with no supporting evidence that he was not involved in any testing of the product. Whether or not Smith actually tested the product is not relevant to our analysis of the trial court's ruling.

[4]Its claims against Armstrong were largely unchanged.

5

of the Texas Medical Board regulations. Smith also violated other Texas Medical Board regulations in connection with his assistance of Armstrong's sale of [NBS] membership interests to Crestview.

### C.  SMITH'S MOTION TO DISMISS

Twenty-one days later, Smith filed a motion to dismiss Crestview's claim against him, contending that the claim was "designed to chill Dr. Smith's First Amendment rights of free speech and association." *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (West 2015) (stating purpose of anti-SLAPP statute is to encourage and protect constitutional rights but also to protect litigant's right to file meritorious suit for injury), § 27.003(a) (West 2015) (permitting defending party to file motion to dismiss if claim concerns party's right to speak, petition, or associate). The trial court held a nonevidentiary hearing on the motion on May 17, 2018, and took the matter under advisement. When the trial court failed to rule on Smith's motion by June 16, 2018—thirty days after the date of the hearing—it was denied by operation of law. *See id.* §§ 27.005(a), 27.008(a) (West 2015). Nevertheless, the trial court signed an order denying Smith's motion to dismiss on July 6, 2018.

### D.  SMITH'S APPEAL

Smith filed his notice of appeal from the denial that same day, staying all proceedings in the trial court. *See id.* §§ 27.008, 51.014(a)(12), (b) (West Supp. 2018); Tex. R. App. P. 26.1(b). In his first issue, Smith argues that the trial court erred by denying his motion because he produced a preponderance of evidence that Crestview's claim for aider liability under the TSA involved his protected

6

"communications . . . consulting about the safety of a medical product," which is a matter of public concern.[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1). He additionally argues that he was entitled to a dismissal because he produced a preponderance of evidence that Crestview's claim necessarily referred to his communications with Armstrong and thus implicated his right to freely associate with Armstrong—someone who shared a common interest to "promote and pursue" the product.[6] *See id.* § 27.005(b)(3).

In his second issue, Smith contends that after he established the applicability of the anti-SLAPP statute to Crestview's claim, Crestview failed to carry its burden to produce clear and specific prima-facie evidence of each element of its aider-liability claim. *See id.* § 27.005(c). We review the trial court's denial de novo, considering the pleadings and affidavits that state the facts upon which liability, or any pleaded defense to liability, is based. *See id.* § 27.006(a); *Lane v. Phares*, 544 S.W.3d 881, 886 (Tex. App.—Fort Worth 2018, no pet.).

---

[5]On appeal, Crestview does not dispute that a matter of public concern was involved.

[6]Crestview does not assert on appeal that Smith and Armstrong did not have a joint, common interest.

## II. DISCUSSION

### A. BURDEN-SHIFTING FRAMEWORK

The Texas anti-SLAPP statute, which "may be cited as the Citizens Participation Act"[7] (the TCPA), is to be construed liberally to effect its dual purposes of protecting constitutional, First Amendment rights "to the maximum extent permitted by law" and of protecting the right to file meritorious lawsuits for demonstrable injury. Tex. Civ. Prac. & Rem. Code Ann. §§ 27.002, 27.011(b) (West 2015). Once a defendant files a motion to dismiss under the TCPA, a burden-shifting framework applies. First, the movant must produce a preponderance of evidence that the legal action against him is based on, relates to, or is in response to his exercise of his rights to free speech, to petition, or to associate. *Id.* § 27.005(b). If the movant does so, the burden shifts to the nonmovant to produce clear and specific prima-facie evidence for each element of its claim. *Id.* § 27.005(c). But if the nonmovant fails to carry this burden, the trial court must grant the motion to dismiss.[8] *Id.* § 27.005(b)– (c).

---

[7]Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 1, 2011 Tex. Sess. Law Serv. 960, 960 (West).

[8]If the nonmovant produces clear and specific evidence supporting its claim and if the movant relies on a defense to liability, the burden shifts back to the movant to establish each essential element of that defense by a preponderance of the evidence. *Id.* § 27.005(d). Smith raised no affirmative defense in the trial court; thus, the burden shift to the nonmovant is the end of the inquiry here.

Accordingly, we first ask whether Smith established by a preponderance of the evidence that Crestview's TSA claim against him involved the exercise of his free-speech or associational rights, invoking the protections of the TCPA. A preponderance of the evidence is that quantum of evidence allowing a determination that it is more likely true than not that Crestview's claim involves these protected rights. *See In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding). We must refer to any submitted affidavits in our de novo review, but we are to look to Crestview's pleadings as "the best and all-sufficient evidence" of the nature of its claim against Smith. *Hersch v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (requiring court to consider pleadings and submitted affidavits).

## B. TCPA's Applicability by a Preponderance of the Evidence

Crestview asserted in response to Smith's motion to dismiss that the TCPA did not apply because its TSA claim was factually based on Smith's conduct, not his communications.[9] The TCPA protects communications that are in furtherance of free-speech or associational rights. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)–(3) (West 2015). A communication is broadly defined in the TCPA as

---

[9]Crestview did not argue in the trial court or in this court that its claim against Smith was exempt from the TCPA's application as a commercial transaction. *See* Tex. Civ. Prac. Rem. Code Ann. § 27.010(b) (West 2015). *See generally Kirkstall Rd. Enters., Inc. v. Jones*, 523 S.W.3d 251, 253 (Tex. App.—Dallas 2017, no pet.) (recognizing nonmovant carries burden to show applicability of exemption).

"includ[ing] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The plain language of this definition extends the application of the TCPA to "[a]lmost every imaginable form of communication, in any medium." *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018). But again, the TCPA's protections extend to all forms of *communication*.

In this case, Crestview specifically and narrowly alleged that Smith's actions aided Armstrong in her violations of the TSA, not his communications. None of the allegations leveled against Smith referred to communications with Armstrong. Rather, Crestview focused on Smith's actions and inactions—Smith "rendered substantial assistance in furtherance of Armstrong's conduct," "conduct[ed] clandestine 'testing,'" "failed to keep any medical records," and "violated . . . Texas Medical Board regulations in connection with his assistance of Armstrong's sale."

We recognize that artful pleading cannot be a detour around the TCPA. *See Garton v. Shiloh Vill. Partners, LLC*, No. 12-16-00286-CV, 2017 WL 6884451, at *4–5 (Tex. App.—Tyler Aug. 23, 2017, no pet.) (mem. op.). But we cannot completely ignore Crestview's pleadings and conclude, as Smith urges, that the actual, yet unpleaded, nature of Crestview's claim was based on his "extensive[]" communications with Armstrong. *See Hersch*, 526 S.W.3d at 467. Although Smith testified at his deposition that he and Armstrong had discussions about the product, these discussions are not the basis of Crestview's narrow claim against him. The

10

practical effect of Smith's position—any action he took as an aider under the TSA necessarily involved communications—would seem to extend the definition of communication, and thus the reach of the TCPA, to noncommunications. *Cf. Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 855–56 (Tex. App.—Austin 2018, pet. filed) (rejecting "broad and isolated interpretation of the TCPA" that would "end-run the specifically enacted scheme for enforcement of the lobbyist-registration statute"). This would be contrary to the plain-language definitions in the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1)–(4); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015).

In support of his argument that the TCPA applies, Smith points to analogous theft-of-trade-secret claims that have been held to involve communications and, therefore, to trigger application of the TCPA. *See Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 294–96 (Tex. App.—Austin 2018, pet. filed); *Elite Auto Body LLC v. Autocraft Bodywerks*, 520 S.W.3d 191, 196–99 (Tex. App.—Austin 2017, pet. dism'd). But in those cases, the plaintiffs specifically alleged that the defendants improperly disclosed protected information to others, leading to the conclusion that those plaintiffs had alleged a communication as that term is defined in the TCPA. *Craig*, 550 S.W.3d at 295–96; *Elite Auto*, 520 S.W.3d at 194, 197–98. Crestview did not include allegations against Smith that involved disclosure of information by statement or document. And the court in *Elite Auto* recognized that a trade-secret claim not involving the making or submitting of a statement or document would not be subject

11

to dismissal under the TCPA because it would not be considered a communication. *Elite Auto*, 520 S.W.3d at 198.

In sum, Crestview's aider-liability claim against Smith does not allege a communication. *See Bumjin Park v. Suk Baldwin Props., LLC*, No. 03-18-00025-CV, 2018 WL 4905717, at *3–4 (Tex. App.—Austin Oct. 10, 2018, no pet. h.) (mem. op.) (holding alleged tortious-interference and breach-of-contract counterclaims were based on conduct and were not within TCPA's purview). Thus, Smith did not meet his burden to show by a preponderance of the evidence that Crestview's claims were subject to the TCPA, ending our inquiry. We overrule issue one.[10]

### III. CONCLUSION

We conclude that Smith failed to show by a preponderance of the evidence that Crestview's pleaded claim against him alleged a communication as that term is defined in the TCPA, rendering the TCPA's procedural protections inapplicable. Thus, the trial court did not err by denying Smith's motion to dismiss.

To be clear, we are not holding that an alleged violation of the TSA can never be subject to a motion to dismiss under the TCPA. If a plaintiff pleaded that a defendant violated the TSA by making or submitting a statement or document, that claim as pleaded might very well be subject to the TCPA's procedural scheme. Neither are we commenting on the merits of Crestview's claim against Smith. The

---

[10]We need not address Smith's second issue directed to Crestview's burden under the TCPA. *See* Tex. R. App. P. 47.1.

12

merits are not at issue in the first step of a TCPA analysis. *See Porter-Garcia v. Travis Law Firm, P.C.*, Nos. 01-17-00203-CV, 01-17-00206-CV, 2018 WL 4027023, at *1 (Tex. App.—Houston [1st Dist.] Aug. 23, 2018, pet. filed). With these limiting comments, we affirm the trial court's denial. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: November 29, 2018

13