COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



YOLANDA PACHECO AND
FERNANDO PACHECO,

§

§

Appellants,

§

v.

§

OSCAR LARA RODRIGUEZ AND
SALINA CHAVEZ RODRIGUEZ

§

§

Appellees.

§

No. 08-19-00129-CV

Appeal from the 143rd

Judicial District Court

of Reeves County, Texas

(TC# 17-04-21935-CVR)

## OPINION

The suit before us arises out of a dog mauling that took the life of Norberto Ramirez Legarda. But this appeal focuses only on the denial of a motion filed under the Texas Citizens Participation Act (TCPA) that sought to dismiss a cross-claim filed by one set of alleged tortfeasors against another. How does a dog mauling get us to the TCPA? A good question, and one that we do not find a satisfactory answer to, or at least an answer that suggests the trial court below erred in denying the TCPA motion. We accordingly affirm the order below.

## I. BACKGROUND

### A. The Original Lawsuit

This case originated in April of 2017, when Jaime Legarda, the representative of the Estate of Norberto Ramirez Legarda, filed a wrongful death lawsuit against Appellees, Oscar Lara

1

Rodriguez and Salina Chavez Rodriguez. It seems that 83-year-old Norberto was attacked and killed by three pit bulls owned by Appellees. The dog attack occurred, however, at the home of Appellants, Yolanda and Fernando Pacheco, who are Norberto's daughter and son-in-law, and who are next-door neighbors of Appellees. At the time of the attack, Appellants were out of town and Norberto was taking care of their Labrador retriever. According to police incident reports, the Appellees' pit bulls entered Appellants' yard through an opening in a fence that separated the properties and attacked both Norberto and the Labrador retriever.

The Estate alleged that Appellees were negligent, negligent per se, and strictly liable for causing Norberto's death. Appellees admit that they owned the pit bulls but claim that they were not on notice that the animals had any abnormally dangerous propensities. The Estate later filed an amended petition that also named Appellants as co-defendants, asserting a premises liability claim against them. Appellants then settled with the Estate and the trial court thereafter granted an order of partial nonsuit of the Estate's claims against Appellants.

### B. The Cross-claim and the Motion to Dismiss

Almost a year later, Appellees filed a cross-claim against Appellants, alleging that they were negligent in three respects: (1) by failing to properly maintain their fence; (2) by "antagoniz[ing]" the pit bulls by "[scaring] them with their lawnmower[;]" and (3) by failing to warn Norberto about the potential danger surrounding the property, including the dangers resulting from their failure to maintain the fence. Appellees allege that Norberto's death would not have occurred but for Appellants' negligence, and that Appellants were therefore either fully or partially responsible for his death. They pleaded that if any damages were awarded against them, then "damages must [also] be assessed against [Appellants]."

2

In addition to this contribution claim, Appellees also sought their own damages from Appellants, alleging that because of the "occurrence made the basis of this lawsuit," they have become "pariahs" and have been "ostracized" by other members of the community. Appellees requested monetary damages to compensate them for the loss of their "reputation and standing in the community," together with court costs and attorney's fees.

Appellants answered and also filed a motion to dismiss the cross-claim under the TCPA. In their motion, Appellants argued that the cross-claim, while less than clear, was in effect a defamation claim based on the fact that Appellees had requested reputation damages.[1] Appellants therefore alleged that the cross-claim was "based on, relate[d] to, or [was] in response to [Appellants'] exercise of the right of free speech, the right to petition, or the right of association," thereby implicating the TCPA. In turn, Appellants argued that the burden then shifted to Appellees to come forward with clear and specific evidence establishing a prima facie case on each essential element of their defamation claim. Appellees responded to the motion, contending that their cross-claim was directly related to the Estate's original wrongful death lawsuit, and that the TCPA excepted claims for bodily injury and wrongful death.

Following a short hearing, the motion was denied by operation of law, and this appeal follows. In a single issue, Appellants contend that this ruling was in error.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The Legislature passed the TCPA to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the

---

[1] Appellants did not file a special exception under TEX.R.CIV.P. 91 to clarify the pleading or challenge the legal basis for the relief sought. *See, e.g., Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (the "purpose of a special exception is to compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action.").

3

maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."[2] TEX.CIV.PRAC.& REM.CODE ANN. § 27.002; *see also MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 188 (Tex.App.--El Paso 2017, no pet.). The TCPA, which is to be liberally construed to effectuate its purpose, is a "bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *see also* TEX.CIV.PRAC.& REM.CODE ANN. § 27.011(b) ("This chapter shall be construed liberally to effectuate its purpose and intent fully.").

To further this end, the TCPA provides for an early dismissal procedure of legal actions implicating certain protected rights for which the plaintiff cannot establish "by clear and specific evidence a prima facie case for each essential element of the claim[.]" *Id.* §§ 27.003(a), 27.005(c). A "legal action" includes a cross-claim. *See id.* §§ 27.003(a), 27.001(6) (defining "legal action" in the context of the TCPA to include a crossclaim). The dismissal procedure involves a multi-step process. Under the first step, the party moving for dismissal must make an initial showing, supported by a preponderance of the evidence, that the disputed claim "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b); *see also In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015).

If the movant carries this initial burden, the trial court must then consider whether the non-movant's claims fall within any statutory exception raised by the non-movant. *See Toth v. Sears*

---

[2] In 2019, the Legislature amended the TCPA, but expressly stated that the amendments only applied to an action filed on or after the effective date of the Act, September 1, 2019, and that any action filed before that date is governed by the law in effect immediately before that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 TEX.GEN.LAWS 684, 687. This appeal is governed by the prior law and any quoted section of the statute is from the prior version.

*Home Improvement Prods., Inc.*, 557 S.W.3d 142, 152 (Tex.App.--Houston [14th Dist.] 2018, no pet.). Among others, the TCPA exempts from its application, "a legal action seeking recovery for bodily injury, wrongful death, or survival or to statements made regarding that legal action." TEX.CIV.PRAC.& REM.CODE ANN. § 27.010(a)(3). The non-movant carries the burden of proving a statutory exemption. *See Kirkstall Rd. Enterprises, Inc. v. Jones*, 523 S.W.3d 251, 253 (Tex.App.--Dallas 2017, no pet.).

If the movant meets the initial burden of demonstrating that the TCPA applies, and the trial court determines that no exception applies, the burden then shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX.CIV.PRAC.& REM.CODE ANN. § 27.005(c); *see also Dallas Morning News, Inc.*, 579 S.W.3d at 376 (discussing the procedure to be followed under the TCPA). If the non-movant does not meet that burden, then dismissal is warranted. TEX.CIV.PRAC.& REM.CODE ANN. § 27.005. If the non-movant does meet that burden, the movant can still win dismissal if they establish "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id*. § 27.005(d). In deciding the motion, a court should consider all "pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. § 27.006(a). The pleadings and evidence should be viewed in a light favorable to the non-movant. *MVS Int'l Corp.*, 545 S.W.3d at 189-90; *see also Dyer v. Medoc Health Services, LLC*, 573 S.W.3d 418, 424 (Tex.App.--Dallas 2019, pet. denied).

We review a trial court's ruling on a TCPA motion to dismiss de novo. *See Dallas Morning News, Inc.*, 579 S.W.3d at 377 (de novo review of the court of appeals' determinations that the parties met or failed to meet their burdens of proof under the TCPA); *MVS Int'l Corp.*, 545 S.W.3d at 189-90 (de novo review of trial court's ruling).

## III. Discussion

### A. The Parties' Arguments

Appellants argue that Appellees brought an independent claim against them for defamation, which they contend is a legal action based on or related to, or was in response to the exercise of their right to free speech, thereby bringing it within the scope of the TCPA. Further, the nature of the attack and national publicity it drew made any communication related to a matter of public concern. TEX.CIV.PRAC.& REM.CODE ANN. § 27.001(7) (defining public concern to include "an issue related to . . . health or safety . . . or community well-being"). Accordingly, Appellants argue that they met their initial burden of establishing that the TCPA applies.

Appellees' brief to this Court does not take direct issue with these claims. Consistent with their written response filed below, they argue that the bodily injury and wrongful death exclusion found in Section 27.010(c) applies here. The "Argument" section of their brief then cites to two recent cases applying the Section 27.010(c) exemption. Otherwise, Appellees' brief asserts no other substantive argument.[3] Consequently, Appellants' reply brief urges that we are generally constrained to consider only the arguments advanced to the trial court. Additionally, Appellants further remind us that an appellate court has no duty to brief the issues that the parties choose not to address.

So, we first turn our attention to the rules for error preservation and briefing waiver.

### B. Error Preservation and Briefing Waiver

Our error preservation rules generally require that "[a]s a prerequisite to presenting a complaint for appellate review" a party must make a timely complaint to the trial court that states "the grounds for the ruling that the complaining party sought from the trial court with sufficient

---

[3] The brief does cite a lengthy passage from Shakespeare's Merchant of Venice about collecting a pound of flesh. While we do not disapprove of innovative advocacy, it still should be tied to a legal issue actually before the Court.

specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" TEX.R.APP.P. 33.1. Appellants point out that Appellees never challenged the existence of an alleged defamatory statement to the trial court and this failure precludes us from considering the issue further. We might agree, but for the Texas Supreme Court's decision in *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 892 (Tex. 2018). There, the court relaxed the preservation rules for a party asserting a TCPA motion to dismiss, stating that the "[r]ules of error preservation should not be applied so strictly as to unduly restrain appellate courts from reaching the merits of a case." *Id*. at 896. In *Adams*, the movant on a motion to dismiss generally claimed in both the trial court and the court of appeals that he was entitled to dismissal under the TCPA because the defamation claim was based on his speech about "services in the marketplace" which was a subset of "matter[s] of public concern" as previously defined by the TCPA.[4] He had not, however, specifically urged to the trial court that his speech touched upon "community or environmental well-being" which was another subset of matters of public concern, and the court of appeals considered that issue waived. *Id*. The Texas Supreme Court disagreed, stating that he "was not required on appeal or at trial to rely on precisely the same case law or statutory subpart that we now find persuasive." *Id.* at 896-97, *citing Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court.") (emphasis in orig.). The court also placed emphasis on the statutory language of the TCPA that requires that a court "*shall* consider the pleadings and supporting and opposing

---

[4] The version of the TCPA in effect when *Adams* was decided defined a "matter of public concern" to include five enumerated categories, including issues related to "environmental, economic, or community well-being" and "a good, product, or service in the marketplace." Act of May 18, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 TEX.GEN.LAWS 961, 961-962. The 2019 revisions to the TCPA substantially re-wrote this definition. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 TEX.GEN.LAWS 684, 687.

affidavits." (emphasis in orig.). *Id.* This suggests an independent duty on the court to look beyond the parties' arguments to the pleadings and affidavits before it, to determine if the predicates for the TCPA are met.

We are also concerned, however, with the obligation of parties to adequately develop their arguments in the briefs filed on appeal. "[Appellate] briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." TEX.R.APP.P. 38.9. Moreover, both the Appellants and Appellees are required by our briefing rules to provide an argument section that "contain[s] a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(a)(i) (requirements for appellant's brief); TEX.R.APP.P. 38.2(a)(1) (appellee's brief must conform to several sections of Rule 38.1, including Rule 38(a)(i)). True, we have a duty to construe briefs liberally. *Horton v. Stovall*, No. 18-0925, 2019 WL 6971668, at *2 (Tex. Dec. 20, 2019). "But that duty does not extend toward making every possible argument for litigants, nor does it require this Court to address under-briefed arguments. If an issue is not fully fleshed out in a brief, then it has not been assigned for our review, and we should not resolve a case on an unassigned issue." *Ridge Nat. Resources, L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 121 (Tex.App.--El Paso 2018, no pet.). The alternative places this Court in the posture of "inadvertently becoming an advocate for the party" or squandering our "finite judicial resources in the service of arguments and debates" that are underdeveloped by the parties. *Id.*

Nonetheless, the unique aspect of the TCPA convinces us that we must, as part of our de novo review, be satisfied that the movant has met the initial burden under the statute to show the

disputed claim is based on, relates to, or is in response to the exercise of free speech, petition, or associational rights.   TEX.CIV.PRAC.& REM.CODE ANN. § 27.005(b).[5]

## C.   The TCPA's Applicability

Thus, we begin with the threshold question of whether the TCPA applies to Appellees' crossclaim.   If not, we need not address the question of whether the bodily injury/wrongful death exception applies to the claim, or any of Appellants' other sub-issues.   *See Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 284 (Tex.App.--Dallas 2019, pet. denied) (when defendant did not meet the initial burden of showing TCPA applied to plaintiff's claims, court need not address other issues raised by the parties); *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 287 (Tex.App.--Dallas 2015, pet. denied) (same).   The key to this inquiry is determining the true nature of Appellees' cross-claim, and whether it is based on or relates to Appellants' exercise of their right of free speech, petition, or association.   *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).   As the Supreme Court has recognized, this determination is made by reviewing the allegations as set forth in their pleadings themselves.   *Id*.   (recognizing that the plaintiff's allegations are the best evidence to determine the nature of a legal action and the applicability of the TCPA); *see also Goldberg v. EMR (USA Holdings) Inc.*, No. 05-18-00261-CV, 2019 WL 3955771, at *2

---

[5] We also note a similar situation arose in *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, No. 18-0656, 2019 WL 6971659, at *4 (Tex. Dec. 20, 2019).   In that case, a property owner allegedly made several statements about a lessee and operator under a mineral lease.   The statements led to a business disparagement claim, and then in response, a TCPA motion to dismiss.   In response to the TCPA motion at both the trial court and court of appeals, the property owner had not specifically challenged whether the statements were a matter of public concern.   Accordingly, the court of appeals did not address that issue on appeal.   The property owner then raised the issue in its petition for review. While the Texas Supreme Court concluded it was proper to raise the new argument at that stage, it noted that the "court of appeals should not be faulted for declining to directly address the matter-of-public-concern question based on how the case was presented in that court[.]"   *Id*.   But were we to similarly just assume the cross-claim arises from some specific defamatory statement, we would then need to move to the next step of deciding if that "statement" was made regarding "a legal action seeking recovery for bodily injury, wrongful death, or survival[.]"   TEX.CIV.PRAC.& REM.CODE ANN. § 27.010(a)(3).   Appellees specifically raise that exception.   However, to do so, we would need to identify what specific statement is at issue, because the parties have not done that for us.   Accordingly, we think it the wiser course to identify the existence of the statement from the record before us.   And if no statement can be found in the cross-action or affidavits, then the chips will fall where they may.

9

(Tex.App.--Dallas Aug. 22, 2019, no pet.) (recognizing that the plaintiff's pleadings are usually "the best and all-sufficient evidence of the nature of the action.").

### 1. *A Claim for Defamation or a Claim for Negligence?*

As set forth above, Appellants contend that the true nature of Appellees' cross-claim was one for defamation. They focus on Appellees' request for damages to their reputation, contending that any damage to their reputation stemmed from the publicity attendant to the dog mauling. Apparently, Norberto's death received nationwide attention, was reported in various news articles, and was discussed in online blogs.

Actionable defamation requires (1) publication of a false statement of fact concerning the plaintiff to a third party, (2) that was defamatory, (3) with the requisite degree of fault, and (4) that proximately caused damages. *Anderson v. Durant*, 550 S.W.3d 605, 617-18 (Tex. 2018). Appellees' cross-claim, however, contains no allegation that Appellants published any statements to a third party--whether true or false--that resulted in the alleged damage to their reputation. In support of the motion to dismiss, Appellants attached several newspaper articles and blogs reporting on the attack. However, none of these articles or blogs reported on any statements made by Appellants, and in fact, Appellants' names were not mentioned in any of the attached publications.

Instead, a closer examination of their pleadings reveal that Appellees are contending that their reputation was damaged by Appellants' negligence in allowing the dog attack to occur by (1) failing to maintain their fence, (2) how they ran their lawn mower, and (3) failing to warn Norberto of the dangers on the property. Absent any allegations that Appellants published any false or defamatory statements following the dog attack, nothing in the pleadings would allow us to interpret the cross-claim as being one for defamation. *See, e.g., Bedford v. Spassoff*, 520 S.W.3d

901, 904 (Tex. 2017) (holding that plaintiffs did not meet their burden of meeting the first element of a defamation claim, where they failed to identify any defamatory statements made by defendants).

Nor does Appellees' request for reputation damages necessarily signal a defamation claim. While many defamation plaintiffs do seek reputational damages, those specific damages are not an element of the tort. A plaintiff in a defamation suit need not seek reputation damages at all and may instead seek damages for mental anguish or economic loss, or in the case of defamation per se, may seek only nominal damages to vindicate their good name. *See Brady v. Klentzman*, 515 S.W.3d 878, 886-887 (Tex. 2017). Additionally, the right to recover reputation damages is not limited solely to defamation suits, and a plaintiff may seek recovery of reputation damages in other types of suits. *See, e.g.*, *Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 774 (Tex.App.--Houston [14th Dist.] 1998, pet. denied) (plaintiff suffered, among other things, damage to her reputation as the result of her wrongful termination); *Olney Sav. & Loan Ass'n v. Farmers Mkt. of Odessa, Inc.*, 764 S.W.2d 869, 872 (Tex.App.--El Paso 1989, writ denied) (sustaining award of damages to plaintiff's personal and business reputation based on fraud and forgery that damaged plaintiff's credit); *Allied Bank W. Loop, N.A. v. C.B.D. & Associates, Inc.*, 728 S.W.2d 49, 54 (Tex.App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.) (where defendant was found negligent in handling a business transaction, plaintiff's business reputation was thereby damaged, entitling him to resulting damages); *Moiel v. Sandlin*, 571 S.W.2d 567, 570-71 (Tex.Civ.App.--Corpus Christi 1978, no writ) (recognizing that defendant who was the subject of a malicious prosecution may be entitled to damages resulting from injuries to his reputation and business interests).

Accordingly, we conclude that Appellees cross-claim cannot properly be categorized as a claim for defamation and is instead more properly characterized as a claim for negligence.

### 2. *Did the Crossclaim Allege any Communications?*

We must still consider whether Appellees' claim for negligence was based on, related to, or was in response to Appellants' right to free speech, petition, or association. TEX.CIV.PRAC.& REM.CODE ANN. § 27.005(b). In making this determination, we note that each of these protected rights requires a "communication" as defined by the TCPA. *See Pinghua Lei v. Nat. Polymer Int'l Corp.*, 578 S.W.3d 706, 712-17 (Tex.App.--Dallas 2019, no pet.), *citing* TEX.CIV.PRAC.& REM.CODE ANN. § 27.001(2)-(4); *see also Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 798 (Tex.App.--Fort Worth 2018, pet. denied) (recognizing that a claim must "allege a communication" in order to invoke the TCPA); TEX.CIV.PRAC.& REM.CODE ANN. § 27.001(3) ("'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern."). *Id.* § 27.001(3).

A broad range of communications, in various mediums, are covered by the TCPA. *See Adams*, 547 S.W.3d at 894 (discussing nature of communications that fit within the TCPA); TEX.CIV.PRAC.& REM.CODE ANN. § 27.001(1) (defining "communication" to include the "making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."). Moreover, as the Texas Supreme Court has recognized, even private communications on "matters of public concern" are covered by the TCPA. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901 (Tex. 2017).

Conversely, when a claim does not allege a communication, and is instead based on a defendant's conduct, the TCPA is not implicated. *See, e.g., MVS Int'l Corp.*, 545 S.W.3d at 197-98 (finding that claim for breach of contract did not trigger the protections of the TCPA, where the

12

claim was not based on or related to any communications made by the defendants); *see also Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170, at *5 (Tex.App.--Fort Worth Dec. 5, 2019, no pet. h.) (mem. op., not designated for publication) (plaintiff's claims for negligence, breach of fiduciary duty, fraud, breach of contract, and gross negligence based on defendant attorney's failure to timely file and serve a personal injury lawsuit on plaintiff's behalf did not allege any communications that invoked the TCPA); *Crestview NuV*, *LLC*, 565 S.W.3d at 798-99 (plaintiff's "aider-liability" claims were based solely on conduct and did not allege a communication as defined by TCPA, and were therefore not subject to dismissal under the TCPA). In the present case, a careful review of Appellees' pleadings reveal that they have not alleged any communications as the basis of their claim, and instead, their allegations center on Appellants' negligent conduct, such as failing to maintain their fence. As such, these allegations are based solely on conduct and not communications; thus, the TCPA does not apply. *See, e.g., Bumjin Park v. Suk Baldwin Properties, LLC*, No. 03-18-00025-CV, 2018 WL 4905717, at *3-4 (Tex.App.--Austin Oct. 10, 2018, no pet.) (mem. op., not designated for publication) (holding that counterclaims for tortious interference and breach of contract were based on conduct, rather than communications, and were therefore not within TCPA's purview).

At best, the only speech related issue is the failure to speak; that is, the failure to warn Norberto of the danger on the property. But an allegation that a defendant was negligent by remaining silent--failing to disclose information to the plaintiff--is not considered a "communication" within the meaning of the TCPA, and therefore does not trigger its application. *See, e.g.*, *Krasnicki*, 583 S.W.3d at 282-84 (the definition of "communication" in the TCPA makes no reference to the withholding of a statement or document, and therefore the TCPA is not triggered by an allegation that a defendant wrongfully withheld information); *Crestview NuV, LLC*,

13

565 S.W.3d at 798 (refusing to extend the definition of "communication" under the TCPA to non-communications).

### 3. If not a Defamation Claim, What Then?

Having concluded the cross-claim does not allege a defamation claim premised on a communication, we feel compelled to describe what it actually does allege. Our reading of the cross-claim indicates that it is primarily a run-of-the-mill claim for contribution wherein one tortfeasor seeks to preserve the right to submit the conduct of another alleged tortfeasor at trial. And Appellants concede in their brief that to the extent Appellees' cross-claim seeks only contribution (that is, a proportionate reduction of the verdict based on Appellants' conduct), the TCPA does not apply and does not mandate dismissal of the crossclaim. The unique aspect of the contribution claim, however, is that Appellees went to the unnecessary step of actually rejoining settling tortfeasors to the litigation.[6]

The second way to view the cross-claim is that it is an attempt to actually state a claim for damages against Appellants based on the alleged breach of three *claimed* duties owed the Appellees: (1) a duty to maintain a fence; and (2) some duty arising out of how one cuts their grass; or (3) one premises owner's duty to another adjacent premises owner to avoid injuring an invitee. And each of these theories seek a specific type of damage based on the collateral consequences from the alleged breach. Of course, a valid negligence claim requires the existence of a legal

---

[6] The Texas Civil Practice and Remedies Code, of course, provides that "[n]o defendant has a right of contribution against any settling person." TEX.CIV.PRAC.& REM.CODE ANN. § 33.015(d). Section 33.016(b) further provides that "[e]ach liable defendant is entitled to contribution from each person *who is not a settling person* and who is liable to the claimant for a percentage of responsibility but from whom the claimant seeks no relief at the time of submission." (emphasis supplied). *Id.* § 33.016. That being said, a settling party's conduct can be submitted to apportion fault among multiple tortfeasors. *Id.* § 33.003(a) (stating the trier of fact, as to each cause submitted, shall determine the percentage of responsibility of each claimant, defendant, settling party, and responsible third party); *Id.* § 33.013(a) (stating general principle that a defendant is liable only for their percentage of responsibility); *Id.* § 33.013(b) (setting forth exceptional circumstances when joint and several liability applies). If the goal was to submit the conduct of Appellants to the fact finder, then with the appropriate evidence and pleading, that could be accomplished by pointing the finger at the proverbial "empty-chair."

duty, a breach of that duty, and damages proximately caused by the breach. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015). Whether one party owes a duty to another is a question of law that courts decide from the facts surrounding the occurrence at issue. *Golden Spread Council, Inc. No. 562 of the Boy Scouts of America v. Akins*, 926 S.W.2d 287, 289-90 (Tex. 1996) (noting that courts must "weigh the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant."). Further, "if damages are too remote, too uncertain, or purely conjectural, they cannot be recovered." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

The existence of any of the duties we describe, or even the measure of damages that Appellees seek for the alleged breach of those claimed duties, is not before us. Nor should anything be taken from this opinion endorsing the existence of these claimed duties or the element of damage sought. The only thing that we hold is the Appellants did not meet their initial burden of establishing that the TCPA applies to Appellees' claims, and we therefore conclude that the trial court properly denied Appellants' motion to dismiss. Appellants' sole issue on appeal is overruled.

## IV. CONCLUSION

We affirm the trial court's denial of Appellants' motion to dismiss, and remand the case for further proceedings not inconsistent with this opinion.

JEFF ALLEY, Chief Justice

January 6, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

15