In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-19-00014-CV

ROSELLA LEE CALLISON, Appellant

V.

C&C PERSONNEL, LLC, DAMERON JOUBERT, AND
DAVID STEPHENSON, Appellees

On Appeal from the 410th District Court
Montgomery County, Texas
Trial Cause No. 18-09-11766-CV

**MEMORANDUM OPINION**

In this interlocutory appeal, we are once again asked to decide the applicability of the Texas Citizens' Participation Act (TCPA) to tort claims in a business setting. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011 (West 2015). In this case, the trial court failed to rule on Appellant Rosella Lee Callison's TCPA motion to dismiss Appellees' wrongful use of trade secrets claims within the time frame permitted by the statute, and the motion was denied by operation of law.

*Id*. § 27.008(a).[1] On appeal, Callison contends the trial court's implicit denial of her TCPA motion to dismiss was error because: (1) the Act applies to the plaintiff's allegations being made against her; and (2) once the burden of proof shifted, the nonmovant failed to present clear and specific evidence establishing a prima facie case for each of its claims. As part of her second issue, Appellant contends certain alleged "deemed admissions" and the terms of an agreed temporary injunction signed by the trial court should not be considered by the trial court as evidence to meet nonmovant's threshold burden of proof.

## I. Background

In 2013, Callison started C&C Personnel with Ryan Conley. C&C provided staffing services for the light industrial business sector. Callison handled sales and brought in new clients, and Conley handled recruiting, accounting, bookkeeping, taxes, and company payroll. According to Callison, Conley abruptly left the business, taking with him critical financial records, passwords to the company's bank accounts, as well as key employees, the company CPA and chief recruiter.

---

[1] Appellees brought additional claims against Callison, including breach of bill of sale and indemnity obligation, and fraud in the inducement; however, Callison only sought dismissal of Appellees' trade secret claims. These claims included misappropriation of trade secrets, civil theft of property, and breach of fiduciary duty causes of action.

Conley immediately began a new staffing company, and Callison alleged that several C&C clients left to sign contracts with Conley's company.

Facing an immediate budgetary shortfall and inability to pay C&C's employees in the wake of Conley's departure, Callison agreed to sell C&C Personnel to Dameron Joubert and David Stephenson at "a deeply discounted valuation" of $35,000.00.[2] Following the sale, Joubert and Stephenson hired Callison to act as their Director of Sales. Appellees asserted they gave Callison this position as part of the agreement to purchase the business, which Callison disputed. After the sale, Callison forfeited her access as an administrator on all company email accounts. Appellees accused Callison of misappropriating trade secret information obtained through company emails containing confidential client customer folders and misusing the information for her personal gain to "unlawfully compete and convert business of C & C." Appellees employed the words "use" and "conduct" in their

---

[2] The parties dispute what was included in the sale of C&C. Appellees claim they only purchased C&C's assets; however, Callison asserts she sold the entire business, which was not limited to the assets. The "Business Bill of Sale" signed by the parties indicated it conveyed "[a]ll the assets, property, rights, and interests (excluding any delinquent tax payments) of C&C Personnel, of every kind and description, tangible or intangible, and regardless of whether or not carried or reflected on the books and records used in the operation of said business[.]"The parties also thereafter entered into a "Membership Assignment Agreement" that mentioned the "Business Bill of Sale" and described it as "the sale of assets of C&C Personnel LLC[.]" The Membership Assignment Agreement conveyed Callison's membership interests to Damon Joubert and David Stephenson.

petition, while avoiding any form of the word "communicate." They acknowledged Callison's misuse involved disclosure.

Callison admittedly set up an automatic forward of company emails to her private account while she owned C&C. However, after the sale of the business, Callison claimed she did not want the emails, but she no longer had the administrative rights to stop the forwarding of the emails. She averred in her affidavit that she repeatedly advised Appellees to stop "spamming" her with C&C emails. Callison further denied that she solicited former clients of C&C or worked on such accounts for her new employer. Rather, she contended the former clients did not have exclusive contracts with C&C Personnel for their staffing needs and simply stopped using C&C due to Joubert and Stephenson's mismanagement.

Appellees sent Callison a letter demanding the return of the alleged misappropriated information, and Callison failed to respond. In the same pleading as their original petition, Appellees sought a temporary restraining order prohibiting Callison from "using or disclosing" confidential or proprietary information. Upon filing their initial pleading, Appellees contemporaneously sought expedited discovery from Callison, which the trial court allowed, making Callison's discovery responses due prior to her answer date. Appellees argued to the trial court they needed the discovery before the temporary injunction hearing. They claimed they

4

required the discovery to determine, among other things, to what extent Callison used their "confidential information to perform services for a competitor of Plaintiffs or for her own personal gain and benefit." In the trial court, Appellees also filed an emergency motion for forensic examination of electronically stored information alleging "Callison used that [confidential] information to acquire Plaintiffs' former clients causing Plaintiffs $766,644.42 of lost revenue." The trial court granted an ex parte temporary restraining order and scheduled a hearing for a temporary injunction. Prior to the scheduled hearing date, the parties negotiated and entered into an agreed temporary injunction. The agreed temporary injunction provided, in part:

> [w]hile Defendant has not, by entering into this Agreed Temporary Injunction, stipulated to any factual findings against Defendant, Defendant acknowledges, for purposes of the entry of this Order that Plaintiffs have shown a probable right to injunctive relief based on the theory of misappropriation of trade secrets, breach of fiduciary duties and civil theft of property, and the right to injunctive relief set forth in the Texas Uniform Trade Secrets Act[.]

The parties dispute whether these negotiations contained an agreement to "reset discovery deadlines" in light of the agreed temporary injunction.

The allegations against Appellant in Appellees' original petition incorporated the demand letter's assertions, including "accessing and forwarding to her personal email C & C and SWSS company folders of confidential and proprietary information

5

which she has used to unlawfully compete and convert business of C & C and SWSS[.]" Appellees attached the demand letter to the verified application for TRO and original petition, which alleged Callison forwarded company emails to herself "comprised of confidential and proprietary information" and that she "us[ed] that information to unlawfully compete and convert business[.]" Appellees sought damages for lost business in the amount of $766,644.42. The overarching theme of Appellees' claims is that Callison misappropriated their confidential and proprietary information contained in emails, then unfairly used that information to acquire their customers.

In her TCPA motion to dismiss, Callison asserted "Plaintiffs' entire basis for their Trade Secret Claims center upon Callison's communication with prospective client companies[.]" Callison also argued the following:

> 56. **"Sales Tradecraft IS Communication."** In order for Plaintiffs to bring a suit against someone in the staffing sales industry for trade secret theft, the premise begins with the allegation that the accused is engaging in misuse of those secrets. How else does a salesperson engage in tradecraft other than by communication, and such communication as defined by the TCPA. Not only is the implication leveled against Callison for "communicating" with prospective clients and others in the staffing industry, but the means by which Callison is accused of "stealing" this so-called trade secret information is through means of electronic communication. This entire case centers on communications of Defendant Callison.

6

Callison further contended that after she showed the TCPA applies, Appellees failed to meet their burden to present clear and specific evidence of each element of their trade Secret Claims and that she could establish an affirmative defense. In her affidavit in support of her TCPA motion to dismiss, Callison denied soliciting business from specific former C&C customers. The trial court's failure to rule on Callison's motion within thirty days from the date of filing functioned as a denial by operation of law. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), 27.008(a) This interlocutory appeal followed. *See id.* §§ 27.008(b), 51.014(a)(12) (West Supp. 2018).

## II. Standard of Review

We review the trial court's denial of a TCPA motion to dismiss *de novo*. *See Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 796 (Tex. App.—Fort Worth 2018, pet. denied) (citations omitted); *Walker v. Hartman*, 516 S.W.3d 71, 79–80 (Tex. App.—Beaumont 2017, pet. denied) (citation omitted) ("The issue of whether [defendant] met his burden of establishing that [plaintiff]'s case related to [defendant]'s exercise of his First Amendment rights is a legal question that we review *de novo* on appeal."); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018) (citations omitted) ("In TCPA appeals, we have decided whether communications are matters of public concern under a *de novo*

7

standard of review[.]"). We consider the pleadings and affidavits stating facts upon which liability or any defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *Smith*, 565 S.W.3d at 796–97 (citations omitted).

### III. Analysis

**A. TCPA Generally**

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002. Courts construe the TCPA liberally to ensure its stated purpose and intent are fully effectuated. *Id*. § 27.011(b); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017).

A TCPA motion to dismiss involves a multi-step process. *See Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *Coleman,* 512 S.W.3d at 898; *Lipsky*, 460 S.W.3d at 586–87; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d). First, the defendant-movant bears the initial burden "to show 'by a preponderance

8

of the evidence' that the plaintiff's claim 'is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association.'" *Lipsky*, 460 S.W.3d at 586 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)). If the movant establishes that the plaintiff's lawsuit implicates one of these rights, the second step shifts the burden to the plaintiff to "'establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Id.* at 587 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). Finally, if the non-movant establishes their prima facie case, the burden shifts back to the movant to establish each essential element of an affirmative defense by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Youngkin*, 546 S.W.3d at 679; *Coleman*, 512 S.W.3d at 898. However, a plaintiff can avoid the TCPA's burden-shifting requirements by showing an exemption applies. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010; *Gaskamp v. WSP, Inc.*, No. 01-18-00079-CV, 2018 WL 6695810, at *6 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.).

**B. Applicability**

We turn first to the TCPA's applicability. *See Morrison v. Profanchik*, No. 03-17-00593-CV, 2019 WL 2202210, at *2 (Tex. App.—Austin, May 22, 2019, no pet. h.) (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018))

9

(noting a "court must consider an exemption's applicability after and in the context of the movant having met its initial burden under the first step of the dismissal process"). In the present case, Callison asserts the exercise of her right to free speech and her right of association is implicated by Appellees' lawsuit. To decide whether a legal action warrants dismissal under the TCPA, the court must consider the pleadings and affidavits stating the facts on which liability is based. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). Determining the legal action's basis in the first step of the dismissal analysis requires us to consider the plaintiffs' petition, which is "the 'best and all-sufficient evidence of the nature of the action.'" *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. 1936)). A legal action's basis is determined by the plaintiff's allegations rather than the defendant's admissions or denials. *Id.* When a plaintiff's pleadings make clear that the action is covered by the TCPA, a defendant need not show more. *Id.*

**1. Right to Free Speech**

Exercising one's right of free speech includes any "communication made in connection with a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3); *Adams*, 547 S.W.3d at 894. "Communication" is defined by the statute to include "the making or submitting of a statement or document in any form or

medium, including oral, visual, written, audiovisual, or electronic." *See* Tex. Civ.

Prac. & Rem. Code Ann. § 27.001(1). "Matter[s] of public concern" include issues

pertaining to health or safety, environmental, economic, or community well-being,

the government, a public official or public figure, or a good, product or service in

the marketplace. *See id.* § 27.001(7). Accordingly, Callison must establish by a

preponderance of evidence that the communications were made in connection with

a matter of public concern. *Id.* § 27.001(3); *Adams*, 547 S.W.3d at 892–94.

### a. Communications

In her motion to dismiss and on appeal, Callison contends that the alleged

"use" of the complained of information necessarily required her to communicate

with her current employer and potential customers. Appellees attempt to draw a

distinction without a difference by characterizing Callison's actions as "conduct"

rather than "communication;" however, Appellees cannot circumvent the TCPA by

artful pleading. *See Smith*, 565 S.W.3d at 798 (citing *Garton v. Shiloh Vill. Partners,*

*LLC*, No. 12-16-00286-CV, 2017 WL 6884451, at *4–5 (Tex. App.—Tyler Aug. 23,

2017, no pet.) (mem. op.)). The Texas Supreme Court has interpreted

communications under the TCPA to mean public and private communication. *See*

*Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509. (Tex. 2015). In Appellees'

combined original petition and application for temporary restraining order, they seek

11

to prevent Callison from "using or disclosing any confidential and proprietary information" and seek to prohibit Callison's "further unauthorized disclosure and use of Plaintiffs' Protected Information."

The TCPA defines "communication" broadly. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1). The Texas Supreme Court recently explained that "[a]lmost every imaginable form of communication, in any medium, is covered." *Adams*, 547 S.W.3d at 894 (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1)). A "disclosure" necessarily constitutes communication, whether that is oral or via email. The Austin Court of Appeals previously determined that misappropriation of trade secret claims were based at least in part on communications where a party shared or utilized information that the other party considered protected as a trade secret. *See Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 198 (Tex. App.—Austin 2017, pet dism'd).

Appellees' attempt to cast Callison's conduct as "use" also fails to avoid the applicability of the TCPA. They allege that Callison used the information to her benefit, to "unlawfully compete and convert business[.]" Utilization and disclosure of purported trade secret information for those purposes necessarily required communicating that information to the customers. *See Gaskamp*, 2018 WL 6695810, at *12 (explaining that the movants' "transfer and disclosure" of the non-movant's

12

trade secret information required communication); *Morgan v. Clements Fluids S. Tex., Ltd.*, No. 12-18-00055-CV, 2018 WL 5796994, at *3 (Tex. App.—Tyler Nov. 5, 2018, no pet.) (indicating defendants' sharing and use of their former employers' trade secrets were TCPA communications). We determine Callison's use or disclosure of confidential and proprietary information qualifies as a communication under the "wide net" the TCPA casts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1); *see also Adams*, 547 S.W.3d at 894; *Gaskamp*, 2018 WL 6695810, at *12; *Morgan*, 2018 WL 5796994, at *3; *Elite Auto Body*, 520 S.W.3d at 198.

### b. Matters of Public Concern

To implicate Callison's right to free speech, the communications must have been in connection with a matter of public concern. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3); *Adams*, 547 S.W.3d at 894. Matters of public concern include goods, products or services in the marketplace. Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)(E). The communications at issue here centered around selling and providing staffing services to various companies. Neither party disputes that C&C sold staffing services in the marketplace or that Callison sold those services on behalf of C&C and later her new employer. The Appellees alleged that the confidential and proprietary information included customer account lists, information, and pricing that Callison utilized to engage in unfair competition. Said another way, Appellees

13

complain that Callison took their proprietary and confidential information and used it to acquire their customers in the staffing services sector for the benefit of herself or her new employer. Because the complained of communication involved selling staffing services to customers, it "related to a good, product or service in the marketplace." *See id*. § 27.001(3), (7)(E).

We conclude that Callison has met her initial burden establishing by a preponderance of the evidence that the communications were in connection with a matter of public concern. Since Callison established Appellees' claims implicated her right of free speech thereby triggering the TCPA's applicability, we need not address the assertion that her right to freely associate likewise triggered the TCPA's applicability.

## C. Commercial Speech Exemption

Although we have determined the TCPA applies to this case, Appellees argue the communications at issue fall under the commercial speech exemption. A party can avoid the TCPA's burden-shifting requirements by establishing that one of the statutory exemptions applies. *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *7 (Tex. App.—Dallas May 15, 2019, no pet. h.) (mem. op.) (citing *Santellana v. CentiMark Corp.*, No. 01-18-00632-CV, 2019 WL 1442228, at *3 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (mem. op.)).

14

When an exemption is invoked, the trial court must consider its applicability after the movant meets its initial burden under the first step of the dismissal process. *Morrison,* 2019 WL 2202210, at *2 (citing *Castleman*, 546 S.W.3d at 688). If an action is exempt, the TCPA does not apply and cannot be used to dismiss the action. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.010; *Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

The TCPA provides an exemption for legal actions against an individual "primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). Commonly known as the "commercial speech" exemption, this exemption applies when

> (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman*, 546 S.W.3d at 688.

On appeal, neither Callison nor Appellees dispute, and the pleadings and evidence establish, that she is primarily engaged in the business of selling services.

15

*See id.*; *Morrison*, 2019 WL 2202210, at *4. In the present case, Callison's affidavit focuses on the fact that she was involved in sales for the provision of staffing services. Specifically, Callison outlined in her affidavit that she worked selling staffing services, first as the Director of Sales for C&C, then in a sales position for her new employer.

Likewise, with respect to the second element of the *Castleman* analysis, Callison acknowledged in her TCPA motion to dismiss that the "entire basis" for Plaintiffs' "Trade Secret Claims center upon Callison's communication with prospective client companies, coworkers at [her new employer], and her receipt of unwanted communications[.]" *See Castleman*, 546 S.W.3d at 688. Callison also demands to know "[h]ow else does a salesperson engage in tradecraft other than by communication[.]" Similar to the defendant in *Morrison*, who denied making the online statements, Callison denies that she stole emails containing confidential information or solicited specific customers. *See Morrison*, 2019 WL 2202210, at *4. There, the Austin Court of Appeals reasoned that regardless of whether the defendant made the statement (i.e., the communication), "we must assume that [the defendant] did make the statement for purposes of determining whether the statement is exempted from the TCPA's application." *Id.* (citing *Castleman*, 546 S.W.3d at 688); *see also Hersh*, 526 S.W.3d at 467 (holding that the movant's denial

of making the communication does not prohibit TCPA motion to dismiss). The pleadings and evidence, including Callison's affidavit testimony, reveal she made the communications in her capacity as a seller of staffing services. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b); *see also Castleman*, 546 S.W.3d at 689; *Morrison*, 2019 WL 2202210, at *4.

The third element of the commercial speech exemption requires that the "statement or conduct" arise out of a commercial transaction involving the kind of goods or services the defendant provides. *Castleman*, 546 S.W.3d at 688. The record reflects that although Callison denied procuring the accounts, several prior customers of C&C signed contracts for staffing services with her new employer. Taking the allegations contained in Appellees' petition as true, certainly Callison's new employer and Callison derivatively, stood to profit from the statements or conduct at issue by acquiring these accounts. *See Staff Care, Inc.*, 2019 WL 2121116, at *8 (citing *Castleman*, 546 S.W.3d at 691) (noting the *Castleman* Court "implied the exemption applies when communications involve business pursuits for oneself or a business stands to profit from the statements at issue"). Utilizing confidential or proprietary information from a previous employer while working for a new employer to target and secure the same customers satisfies this element.

Finally, the last element requires that "the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides." *Castleman*, 546 S.W.3d at 688. The pleadings and evidence show that Callison was a salesperson in the staffing services industry for many years, which included her time at C&C and her new employer. The conduct she allegedly engaged in and the communications at issue were directed at prior actual and potential customers. These companies were previous customers of C&C, and several ultimately signed contracts with Callison's new employer. Therefore, the statements or conduct were intended for actual or potential customers seeking the services Callison spent years selling. *See Castleman*, 546 S.W.3d at 688; *Morrison*, 2019 WL 2202210, at *4.

Having determined the *Castleman* elements are satisfied, the commercial speech exemption applies in this case. *See Castleman*, 546 S.W.3d at 688; *Morrison*, 2019 WL 2202210, at *4; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). Because we conclude the commercial speech exemption applies and precludes dismissal based on the TCPA, we need not address whether Appellees have established by clear and specific evidence a prima facie case for every element of their trade secret causes of action. *See Morrison*, 2019 WL 2202210, at *5 (noting that because the commercial speech exemption applied, they need not address the

18

assertion that the plaintiff failed to meet his burden of establishing by clear and specific evidence a prima facie case).

## IV. Conclusion

While the TCPA applies, the communications at issue fall within the TCPA's commercial speech exemption, and the trial court properly denied Callison's motion to dismiss Appellees' trade secret claims.[3] Accordingly, we affirm the trial court's denial of Callison's TCPA motion to dismiss.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 30, 2019
Opinion Delivered July 11, 2019

Before McKeithen, C.J., Kreger and Johnson, JJ.

---

[3] In our disposition of this appeal, we do not reach or address the issue surrounding the propriety of the expedited discovery order or purported deemed admissions.