In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00335-CV
_____

**TODD NOBLES, Appellant**

**V.**

**UNITED STATES PRECIOUS METALS, L.L.C. AND NATHAN CAMP,**
**Appellees**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-203,885**

**MEMORANDUM OPINION**

Appellees United States Precious Metals, L.L.C. (USPM) and Nathan Camp

sued Appellant Todd Nobles for breach of contract, business disparagement, and

defamation per se.[1] The trial court entered an order denying Nobles's motion to

---

[1] Appellees also sued for harassment and "potential stalking," which they later
acknowledged were not recognized causes of action, instead referring to them as
"exemplars."

1

dismiss under the Texas Citizens Participation Act (TCPA). *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011. Nobles raises two issues in this interlocutory appeal: (1) whether Appellees' claims are based on, related to or in response to Nobles's communications made either in connection with a matter of public concern or with others invoking common interests; and (2) whether Appellees' nonsuit and responsive briefing meet their affirmative burden under the TCPA to establish a prima facie case for every requisite element of their claims by clear and specific evidence. We hold the TCPA is not applicable to Appellees' claims and affirm the trial court's order denying Nobles's motion to dismiss.

## I. Background

The underlying dispute arises out of a buyout agreement between Appellees and Nobles executed on December 4, 2017.[2] This buyout agreement contained a "mutual non-disparagement" provision. Both Nobles and Camp previously had ownership interests in USPM and Cross Creek Properties (CCP). Through the buyout agreement, USPM, CCP, and Camp acquired Nobles's interests in USPM and CCP.

---

[2] The parties refer to this document interchangeably as the "buyout agreement" or the "Verified Settlement and Release Agreement." For purposes of clarity, we refer to it as the "buyout agreement" in this opinion.

Following the buyout, Nobles remained in touch with various former and current USPM employees, speaking to them occasionally by telephone or text. Casey Mozley was one of these employees. Sometimes their discussions concerned sports and other personal interests, while at other times, the discussions centered around Camp's management of the business after Nobles's departure.

Appellees filed suit against Nobles seeking a temporary restraining order, temporary injunction, and permanent injunction based on Nobles's alleged violation of the anti-disparagement agreement. In their original petition, Appellees alleged that

> Mr. Nobles disparaged Mr. Camp in his conversation with Casey Mozley on or about March 4, 2019. Mr. Nobles claimed to be acting in partnership with a disgruntled employee who quit her employment at USPM, Ms. Christi Armstrong. Mr. Nobles stated that he was going to "take the company back" from Mr. Camp, and that he was in the process of documenting a future lawsuit against Camp in order to take over control of USPM.

Appellees pleaded causes of action for breach of contract, business disparagement, defamation per se, harassment, and "potentially stalking of Camp by Nobles." Appellees sought to recover actual damages, attorneys' fees and costs, and punitive damages. In support of their petition, Appellees attached a redacted version of the signed buyout agreement showing the mutual non-disparagement provision. The

3

trial court granted the temporary restraining order and set the temporary injunction for oral hearing.

Nobles filed a TCPA motion to dismiss the business disparagement and defamation per se claims, arguing that the "lawsuit is clearly intended to restrict Defendant's exercise of his rights to speak and associate freely." [3] Nobles further argued that USPM could not establish by clear and specific evidence a prima facie case for each essential element of those claims. In Nobles's TCPA motion to dismiss, he alleged that since the parties executed the buyout agreement, Appellees had engaged in conduct that caused him financial harm, and specifically, Camp shifted tax obligations to Nobles. In his TCPA motion to dismiss, Nobles explained that

> [w]hile Defendant is no longer an owner of USPM pursuant to the Agreement, he has remained in occasional, casual social contact with some of his former coworkers who remain affected by Plaintiffs' business practices that necessitated Defendant's departure from USPM. Plaintiffs' conduct has caused Defendant to be concerned for his financial and legal well-being, as well as that of his former employees and coworkers, for whom he feels some ethical responsibility.

In his TCPA motion to dismiss, Nobles further contended that Appellees filed suit against him in "apparent retaliation for questioning Plaintiffs' tax

---

[3] Nobles did not move to dismiss Appellees' breach of contract claim in his TCPA motion. Accordingly, we do not address the breach of contract cause of action, despite the parties' extensive briefing on the breach of contract claim. *See* Tex. R. App. 33.1

4

activities[.]"Nobles complained that his "occasional personal conversations" prompted Appellees to file the lawsuit. Ultimately, Nobles argued that the TCPA applied to bar Appellees' claims against him for business disparagement and defamation per se because they "are based on, related to, and are in response to Defendant's exercise of his right of free speech." Nobles argued that the communications "were made in connection with a matter of public concern, specifically concerning a good, product or service in the marketplace[.]" He also contended the TCPA applied because his communications with current and former USPM employees constituted communications "between individuals who join together to collectively express, promote, pursue, or defend common interests" which implicated his right of association. Nobles also sought sanctions and to recover his attorney fees.

In the trial court, Appellees responded that the TCPA did not apply and that they were simply attempting to enforce a settlement agreement, specifically the non-disparagement provision. Appellees non-suited their business disparagement, defamation per se, harassment and "potential stalking" claims without prejudice the day of the hearing on the TCPA motion to dismiss leaving only their breach of contract claim. The trial court denied Nobles's TCPA motion to dismiss, and this interlocutory appeal followed. *See id.* §§ 27.008(b), 51.014(a)(12).

## II. Standard of Review

We review the trial court's denial of a TCPA motion to dismiss *de novo*. *See Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 796 (Tex. App.—Fort Worth 2018, pet. denied) (citations omitted); *Walker v. Hartman*, 516 S.W.3d 71, 79–80 (Tex. App.—Beaumont 2017, pet. denied) (citation omitted); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018) (citations omitted) "In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied) (citations omitted); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).

Here, Nobles argues that the TCPA applies (1) because his communications dealt with goods, products or services in the marketplace, and (2) his communications were also "between and among persons who are collectively pursuing a matter of common interest[,]" particularly an "evaluation of the efficacy, lawfulness, and ethics of USPM's business operations." We limit our analysis to those two asserted bases for TCPA applicability. *See Forget About it, Inc. v. BioTE Medical, LLC*, 585 S.W.3d 59, 66 (Tex. App.—Dallas 2019, pet. denied); *Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *2 (Tex. App.—Houston

6

[14th Dist.] Aug. 23, 2016, no pet.) (mem. op.) (confining review on appeal to the bases for TCPA applicability asserted in the TCPA motion to dismiss); *see also* Tex. R. App. P. 33.1.

### III. Analysis

### A. Effect of Appellees' Partial Non-suit

A TCPA motion to dismiss survives a nonsuit, because unlike a nonsuit, the TCPA motion to dismiss permits the movant to obtain a dismissal with prejudice, attorney's fees, and sanctions. *See Walker*, 516 S.W.3d at 80. Nobles's TCPA motion to dismiss survived Appellees' nonsuit of their business disparagement and defamation per se claims, and we therefore address the merits of the issues on appeal. *See id.* at 80.

### B. TCPA Generally

The legislature recently amended the TCPA. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011). The prior version of the statute controls cases filed before September 1, 2019, and therefore, applies to this case. *See id.* §§ 11–12, 2019 Tex. Gen. Laws at 687.[4]

---

[4] While we cite to the current version of the statute throughout this opinion, we provide the session law cites at the outset of our analysis showing the prior

7

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. Courts construe the TCPA liberally to ensure its stated purpose and intent are fully effectuated. *See id.* § 27.011; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). Under the applicable version of the TCPA, a party may file a motion to dismiss a "legal action" that is "based on or is in response to a party's exercise of the right of free speech . . . or right of association[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).

A TCPA motion to dismiss involves a multi-step process. *See id.* § 27.005(b)–(d); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *Lipsky*, 460 S.W.3d at 586–87. First, the defendant-movant bears the initial burden "to show 'by a preponderance of the evidence' that the plaintiff's claim 'is based on, relates to, or

version of the statute applicable to this case and the recent amendments applicable to cases filed after September 21, 2019.

is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association.'" *Lipsky*, 460 S.W.3d at 586–87 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131–32 (Tex. 2019). If the movant establishes that the plaintiff's lawsuit implicates one of these rights, the burden shifts to the plaintiff to "'establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Lipsky,* 460 S.W.3d at 587 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). Finally, if the nonmovant establishes their prima facie case, the burden shifts back to the movant to establish each essential element of an affirmative defense by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Youngkin*, 546 S.W.3d at 679; *Coleman*, 512 S.W.3d at 899.

## C. TCPA Applicability

In the present case, Nobles asserts Appellees' claims are based on, related to, and are in response to his exercise of his right to free speech and his right of association. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). To decide whether a legal action warrants dismissal under the TCPA, we consider the pleadings and affidavits stating the facts on which liability is based. *See id.* § 27.006(a). Determining the legal action's basis is the first step of the dismissal analysis and

requires us to consider the plaintiffs' petition, which is "the 'best and all-sufficient evidence of the nature of the action.'" *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. 1936)). A legal action's basis is determined by the plaintiff's allegations rather than the defendant's admissions or denials. *Id.* When a plaintiff's pleadings make clear that the action is covered by the TCPA, a defendant need not show more. *Id.* Although Nobles did not submit any affidavits in support of the motion to dismiss, we examine the parties' pleadings and the affidavit of Camp. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *Dyer*, 573 S.W.3d at 424; *Walker*, 516 S.W.3d at 79 (noting pleadings are considered "as evidence" under the TCPA) (citations omitted).

### i. Right to Free Speech

Exercising one's right of free speech includes any "communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3); *Adams*, 547 S.W.3d at 894. "Matter[s] of public concern" include issues pertaining to health or safety, environmental, economic, or community well-being, the government, a public official or public figure, or a good, product or service in the marketplace. *See Adams*, 547 S.W.3d at 894; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7). Nobles argues that the communications at issue concerned goods, products or services in the marketplace. Accordingly, that is the "matter of

10

public concern" we address. *See* Tex. R. App. 33.1; *Lahijani v. Melifera Partners, LLC*, No. 01-14-01025-CV, 2015 WL 6692197, at \*3 (Tex. App.—Houston [1st Dist.] Nov. 3, 2015, no pet.) (mem. op.) (concluding where TCPA motion to dismiss argued only that defendant's statements were related to a "service in the marketplace," only that theory was preserved for review). Nobles must establish by a preponderance of the evidence that his communications were made in connection with this matter of public concern. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3); *Adams*, 547 S.W.3d at 892.

The parties do not dispute that Nobles communicated with current and former USPM employees or that those communications formed the basis of the lawsuit. Specifically, Appellees alleged that Nobles contacted Mozley and Camp. Nobles characterizes the communications as "occasional personal conversations[.]" The Texas Supreme Court has previously held "that private communications are sometimes covered by the TCPA."[5] *See Creative Oil & Gas*, 591 S.W.3d at 136 (citing *Coleman*, 512 S.W.3d at 901; *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509–10 (Tex. 2015)). The question is whether, as Nobles asserted in his TCPA

---

[5] These prior cases involving private communications dealt with "environmental, health or safety concerns that had public relevance beyond the pecuniary interests of the parties involved." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019) (citations omitted).

11

motion to dismiss, those communications concerned a product, good, or service in the marketplace.

In *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, the Texas Supreme Court addressed the meaning of "good, product or service in the marketplace." 591 S.W.3d at 137. There, the Court determined that the communications at issue were to "a limited business audience concerning a private contract dispute" and did not relate to a matter of public concern. *See id.* at 136. The Court explained that the record was "devoid of allegations or evidence that the dispute had any relevance to the broader marketplace or otherwise could reasonably be characterized as involving public concerns." *See id.*

Similarly, the communications at issue here related to Camp's operation of USPM following Nobles's departure and Nobles's personal tax liabilities following the buyout. While USPM may offer goods or services in the marketplace, the alleged communications forming the basis of the lawsuit do not pertain to those goods or services. Neither the pleadings nor any affidavits establish that Nobles's communications went beyond criticizing Camp's handling of internal USPM operations, i.e., managing employees, Nobles's desire to regain control of the company, or complaining about Nobles's own tax burden following the buyout. The complained of communications to current and past employees dealt with private

12

company matters and Nobles's own pecuniary interest rather than USPM's goods, products, or services in the marketplace.

Not all communications relating somehow to a broad category set out in section 27.001(7) always regard a matter of public concern. *See id.* at 137. "A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id.* The case we find before us boils down to a private dispute over a buyout agreement and the anti-disparagement provision contained therein, the management of the company at issue subsequent to that buyout, and a party being dissatisfied with his tax burden following the sale. Based on the record before us, we conclude that Nobles failed to meet his burden of establishing by a preponderance of the evidence that the communications at issue "related to a good, product or service in the marketplace" constituting "a matter of public concern."

### ii. Right of Association

The applicable version of the TCPA defines the right to associate as "a communication between individuals who *join together* to *collectively* express, promote, pursue, or defend *common interests*[.]" Act of May 21, 2011, 82nd Leg., R.S., ch. 341 § 2, 2011 Tex. Sess. Law Serv. 960, 960 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)) (emphasis added).

13

Appellees' petition complains of statements Nobles made to Mozley and Camp which form the basis of this lawsuit.[6] Nobles also argues that the communications were an exercise of his right of association. Specifically, he contends that the "communications are between and among persons collectively pursuing a matter of common interest – evaluation of the efficacy, lawfulness, and ethics of USPM's business operations."

The record reveals that Nobles's communications with Mozley and Camp consisted of him complaining about his dissatisfaction with the buyout, his tax burden as a result of the bill, his intention to file a lawsuit to regain control of the company, and Camp's treatment of employees. Nothing in the record, either by way of pleadings or affidavits, establishes that Nobles "*join[ed]* together to *collectively* express, promote, pursue, or defend *common interests*" with Camp or Mozley. *See id.* (emphasis added).

Despite Nobles's characterization in the TCPA motion to dismiss and on appeal that the communications were between and among persons "collectively

---

[6] The petition briefly mentions another former employee that Nobles allegedly worked "in partnership" with; however, the petition does not describe any communications between Nobles and this other former employee that form the basis of the lawsuit.

pursuing a matter of common interest," the record does not bear this out.[7] Rather, the record shows that Nobles was unhappy with the buyout, desired to regain control of the company, and planned to file a lawsuit; nothing in the record indicates Mozley joined with Nobles to pursue those as common interests. *See id.* Likewise, Nobles's communications with Camp did not involve the pursuit of a common interest. If anything, the record reflects that the interests of Nobles and Camp diverged. *See Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728 (Tex. App.—Dallas 2016, pet. denied) (concluding that communications "between adversaries" were "not between persons acting to promote, pursue, or express their common interest"). Nobles did not show by a preponderance of the evidence that the communications were an exercise of his right to associate.

Nobles failed to satisfy his initial burden to show by a preponderance of the evidence that Appellees' business disparagement and defamation per se claims were based on, related to, or in response to his exercise of the right of free speech or the right of association, and therefore did not trigger the TCPA's applicability. *See Lipsky*, 460 S.W.3d at 586–87 (quoting Tex. Civ. Prac. & Rem. Code Ann. §

---

[7] When reviewing a TCPA motion to dismiss, we consider pleadings in the light most favorable to the nonmovant and do not "blindly accept attempts by [appellants] to characterize [appellees'] claims as implicating protected expression. *See Shields v. Shields*, No. 05-18-01539-CV, 2019 WL 4071997, at *6 (Tex. App.—Dallas Aug. 29, 2019, pet. denied) (citations omitted).

15

27.005(b)). Accordingly, the burden never shifted to Appellees to establish a prima facie case for their claims of business disparagement and defamation per se. *See id.* (explaining the burden shifting framework of the TCPA); *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 287 (Tex. App.—Dallas 2015, pet. denied) (reasoning that where a movant failed to meet its burden of showing the TCPA's applicability, it need not address other prongs of TCPA analysis). We overrule both issues.

## IV. Conclusion

Having determined that Nobles failed to meet his burden to establish by a preponderance of the evidence that the TCPA applies, we conclude the trial court properly denied his TCPA motion to dismiss Appellees' business disparagement and defamation per se claims. We affirm the trial court's order denying Nobles's TCPA motion to dismiss.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on January 24, 2020
Opinion Delivered March 26, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.

16