

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00506-CV

———————————————

NEWSTREAM ROANOKE 6.125, LLC, Appellant

V.

JONELL SHORE, YOUNG OK KIM, AND SOON BOON CHANGE, Appellees

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 22-5855-431

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

This is an interlocutory appeal from the trial court's order denying Appellant Newstream Roanoke 6.125, LLC's (Newstream) motion to dismiss the breach of fiduciary duty claim of Appellees Jonell Shore, Young Ok Kim, and Soon Boon Chang[1] on Texas Citizen's Participation Act (TCPA) grounds. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011, 51.014(a). Newstream contends that Appellees' breach of fiduciary duty claim is "based on or is in response to" its right to petition— the filing of a Rule 11 agreement between Newstream and two other entities. *See id.* at §§ 27.003(a), .005(b)(1)(B). Because we conclude that Appellees' claim is not "based on or is in response to" the Rule 11 agreement, we will affirm. *See id.*

## II. BACKGROUND

This appeal stems from a business dispute involving the purchase and development of certain real estate. In March 2022, Silk Capital Development, LLC (Silk) sued Newstream, Newstream Land Partners – Roanoke LLC (the Company), and Timothy C. Nystrom, stating that "[s]ometime in 2018," Nystrom approached Silk and proposed that it and several other investors form a company to purchase, develop, and sell approximately 6.125 acres of real property in Roanoke, Tarrant

---

[1]The style in the pleadings before the trial court spells Chang's name "Change." Because this appears to be a typographical error, we will refer to this Appellee by "Chang," which is the name used in Appellees' brief and the Company Agreement.

County, Texas (the Property).[2] Nystrom was alleged to own or operate Newstream.[3] According to Silk, it agreed to invest $1,450,000 and to receive a majority share in the Company's ownership. Newstream was the Company's managing member, and Shore, Kim, and Chang were three of the Company's minority members. The Company was governed by the "Company Agreement of Newstream Land Partners – Roanoke LLC" (the Company Agreement).

Citing "misdeeds and failures to comply" with the Company Agreement, Silk's lawsuit sought an involuntary winding up and termination of the Company and alleged various causes of action. Shortly after the lawsuit was filed, Appellees intervened in the lawsuit.[4]

In May 2022, Silk settled its claims in the lawsuit against Newstream, the Company, and Nystrom by way of a Rule 11 agreement that was filed with the trial court. The Rule 11 agreement called for the Company to sell the Property; for Silk to release its claims against Newstream, the Company, and Nystrom; for proceeds from

---

[2]Silk, the Company, and Nystrom are not parties to this appeal.

[3]Silk's pleadings stated that Nystrom "owned and controlled" Newstream through his company Newstream Commercial, LLC.

[4]On the same day that it filed suit, Silk sent a letter to Newstream notifying it that Silk had "determined, in good faith" that Newstream was "guilty of gross negligence, fraud, theft, willful misconduct, and/or misappropriation of funds" and that it was removing Newstream as manager of the Company and appointing itself as "substitute" manager of the Company. According to Appellees, despite these allegations, Newstream was not removed because it "obtained the acquiescence of Silk to waive its complaints about [Newstream's] misconduct."

the Property's sale to pay off a portion of Silk's loan to the Company; and for proceeds from the Property's sale to be preferentially distributed to Silk. Silk later nonsuited its claims against Newstream, the Company, and Nystrom.

Thereafter, Appellees amended their petition in intervention, quoted from the Rule 11 agreement, and alleged both direct causes of action and derivative claims—including breach of fiduciary duty—against Newstream. Appellees claimed that Newstream sold the Property to its "affiliate" and, rather than distribute the proceeds pro rata as required by the Company Agreement, gave Silk an "unlawful preferential distribution" of the proceeds. The suit alleged that Newstream as manager owed fiduciary duties to the Company and engaged in an "interested transaction" and used the company assets for its own self-interest. *See* Tex. Bus. Orgs. Code Ann. § 101.255(b)(1)–(2) (providing that "[a]n otherwise valid and enforceable contract or transaction" is valid and enforceable if one of the stated conditions is satisfied). Further, Appellees asserted that "the terms of the Property sale were less favorable than would have been achievable on the open market."

Newstream moved to dismiss Appellees' breach of fiduciary duty claim pursuant to the TCPA. It alleged that Appellees' claim was a legal action based on or brought in response to its right to petition. Citing Texas Civil Practice and Remedies Code Section 27.001(4), Newstream contended that the "settlement agreement and the Rule 11 memorialization of same, as well as the filing of the Rule 11 [a]greement into the record, are all protected communications because those communications

4

were made 'in or pertaining to a judicial proceeding.'" In addition, Newstream asserted that Appellees' claim failed because it was barred by "judicial privilege."[5]

Thereafter, Appellees amended their petition in intervention and filed their response to the motion to dismiss. In their response, Appellees asserted that the breach of fiduciary duty claim was "based upon the actions of [Newstream] leading up to and prompting the memorialization of the Rule 11, not the Rule 11, per se." According to Appellees, the Rule 11 agreement was only "the instrument memorializing the bad acts" previously engaged in by Newstream.

In their amended petition in intervention, Appellees attached and incorporated several documents, including the Company Agreement; affidavit of Shore; Silk's letter removing Newstream as manager; the Rule 11 agreement; affidavit of Yuri Han, a clerk with Appellees' law firm, setting out information about the demand for an accounting; the order of non-suit regarding claims by Silk against Newstream, the Company, and Nystrom; the minority shareholder's letter requesting to inspect books and records and to preserve documents; the shareholder's letter demanding corporate action to remedy the alleged wrongdoing by Newstream, the Company, and Silk; and emails between the attorneys. Shore's affidavit stated the following:

- She invested $500,000 in the Company in return for her membership units;

---

[5]While Newstream and Appellees argued the applicability of "judicial privilege" before the trial court, neither addressed it on appeal. Therefore, it is waived. *See* Tex. R. App. P. 38.1(f), (i).

5

- Around March 4, 2022, she learned that the Company intended to sell its final property assets—the Property—to an entity affiliated with Newstream and to split the proceeds pro rata among the Company's members;

- Newstream never provided her with any information about whether the proposed sale of the Property was for market price or whether it presented the best return to the Company;

- In connection with the March 4, 2022 notice of intent to sell the Property, she instructed her counsel to seek the books and records of the Company and an accounting of the planned distribution of proceeds from the Property's sale, but Newstream refused;

- She expressed her disapproval of the Property's sale but knew that Silk generally had the votes to approve it and expected Silk would likely want assurances that the terms of the sale maximized the Company's return on the investment;

- Around May 11, 2022, she learned that Silk approved the Property's sale in exchange for certain minimum guaranteed distributions;

- The Company Agreement required the distribution of proceeds from the sale of the Company's final assets to be pro rata to all of its members;

- She never received disclosure that the Company planned to exclude her and the other minority members prior to the Property's July 6, 2022 closing; and

- As of August 16, 2022 (the affidavit's date), she had not received any pro rata distributions of the sale proceeds as required by the Company Agreement.

Newstream filed a reply to the response, arguing that Appellees' claim was not based on negotiations of the written settlement agreement, but it was "squarely based on [Newstream's] written communication filed with the Court." It further asserted

that Appellees failed to present clear and specific evidence of wrongful conduct that caused any derivative damages.

The trial court held a non-evidentiary hearing on the motion to dismiss and took the matter under advisement. It later signed an order finding that "the gravamen of [Appellees'] claim for breach of fiduciary duty in this case is premised on conduct, not on communication" and "[t]he fact that there were communications involved in the events giving rise to the claim does not create a sufficient nexus to the claim to invoke the TCPA." Accordingly, the trial court denied the motion to dismiss. Newstream appeals from that order.

### III. DISCUSSION

In three issues on appeal, Newstream asks: (1) Did the trial court err in denying Newstream's TCPA motion to dismiss based on its finding that the gravamen of Appellees' claims was premised on conduct rather than communications? (2) Is a "legal action based on or in response to" a communication under the TCPA when, as pleaded by claimant, the communication establishes the existence of a legal right or duty and/or breach of that right or duty? (3) Is a "legal action based on or in response to" a communication under the TCPA when the absence of that particular communication would render the cause of action, as pleaded by claimant, to be non-existent? We construe all of these questions as generally challenging the denial of Newstream's TCPA motion and will address them together.

## A. Standard of Review and Applicable Law

The TCPA's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. The statute provides this protection by authorizing a motion to dismiss early in the covered proceedings, subject to expedited interlocutory review. *McLane Champions, LLC v. Hous. Baseball Partners LLC*, No. 21-0641, 2023 WL 4306378, at *4 (Tex. June 30, 2023) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, .008).

A party who moves for dismissal under the TCPA invokes a three-step, burden-shifting process: (1) first, the movant seeking dismissal must demonstrate that a "legal action" has been brought against it and that the action is "based on or is in response to" an exercise of a protected constitutional right; (2) second, the burden shifts to the party bringing the legal action to avoid dismissal by establishing, by clear and specific evidence, a prima facie case for each essential element of the claim in question; and (3) third, the burden shifts back to the movant to justify dismissal by establishing an affirmative defense or other ground on which it is entitled to judgment as a matter of law. *Hanson v. Johnson*, No. 02-23-00040-CV, 2023 WL 3643640, at *2 (Tex. App.—Fort Worth May 25, 2023, no pet.) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d)); *Miller v. Schupp*, No. 02-21-00107-CV,

8

2022 WL 60606, at *1 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.). If the movant does not meet the initial burden, the motion to dismiss fails. *Lugo v. Sanchez*, No. 03-21-00058-CV, 2021 WL 5312323, at *3 (Tex. App.—Austin Nov. 12, 2021, pet. denied) (mem. op.).

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021); *Hanson*, 2023 WL 3643640, at *3. In considering whether a legal action is subject to or should be dismissed under the TCPA, we consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). The plaintiff's allegations, and not the defendant's admissions or denials, constitute the basis of a legal action. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We view the pleadings and evidence in the light most favorable to the nonmovant. *Kassab v. Pohl*, 612 S.W.3d 571, 577 (Tex. App.— Houston [1st Dist.] 2020, pet. denied). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

## B. Analysis

Here, our analysis begins and ends with the first step of the TCPA three-step process: whether the TCPA applies to this action. *See McLane Champions, LLC*, 2023 WL 4306378, at *5. As its initial burden under the TCPA, Newstream was

9

required to establish a nexus between the rights protected by the statute and Appellees' claims. *See Apache Corp. v. Apollo Expl, LLC*, No. 11-21-00295-CV, 2023 WL 3511262, at *3 (Tex. App.—Eastland May 18, 2023, no pet.) (mem. op.) (citing *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied)). To do so, it must have shown that the claim is "factually predicated on the alleged conduct that falls within the scope of [the] TCPA's definition of 'exercise of the right of free speech,' petition or association." *Id.* (citing *Grant*, 556 S.W.3d at 879). Newstream must have demonstrated that the action is either "based on" or is "in response to" an exercise of a protected right. *Id.*

The protected right at issue here is the "exercise of the right to petition," which is defined by the TCPA to include a communication in or pertaining to a judicial proceeding. Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)(A)(i). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* at § 27.001(1). The ordinary meaning of "judicial proceeding" is "an actual, pending judicial proceeding." *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 429 (Tex. App.—Dallas 2019, pet. denied) (citing *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728–29 (Tex. App.—Dallas 2016, pet. denied)).

"[B]ased on or in response to" is not defined, and it was—until the TCPA statute was amended in 2019—broadly worded as "based on, relates to, or is in response to." *ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 626 (Tex.

10

App.—Houston [1st Dist.] 2022, pet. denied).  The 2019 amendment deleted "relates to," thereby requiring future movants to establish that the legal actions they seek to dismiss are "based on" or "in response to" their exercise of a protected right.  *Id.* at 627.  Therefore, the amendment now requires TCPA movants "to establish a closer nexus between the claims against them and the communications they point to as their exercise of protected rights."  *Id.* at 629.

"The ordinary meaning of the 'is based on' component denotes a legal action that has the relevant TCPA-protected activity 'as a main ingredient' or 'fundamental part' of the challenged legal action."  *Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *8 (Tex. App.—Houston [1st Dist.] June 29, 2023, no pet. h.) (mem. op.).  The "in response to" component denotes some sort of answer or other act in return.  *Id.*

The meaning of the phrase "based on or in response to" has been addressed in a number of recent TCPA cases, two of which inform our decision in this case.  *See Apache Corp.*, 2023 WL 3511262, at *4–5; *Cweren v. Eureka Multifamily Grp., L.P.*, No. 01-21-00470-CV, 2023 WL 2977755, at *14 (Tex. App.—Houston [1st Dist.] Apr. 18, 2023, no pet.) (mem. op.).

In *Apache Corp.*, a press release was at the center of the TCPA claim.  2023 WL 3511262, at *1.  The press release referenced a reorganization of Apache's assets as well as a statement from Apache's chief executive officer and president.  *Id.*  The appellees filed a lawsuit against Apache and another corporation, APA, asserting a

11

cause of action under the Texas Uniform Fraudulent Transfer Act, alleging that the reorganization made it impossible, or at least more difficult, to reach certain assets of APA in order to satisfy a judgment against Apache in another lawsuit. *See* Tex. Bus. & Com. Code Ann. §§ 24.001–.013. Apache and APA then filed a motion to dismiss that included relief under the TCPA, the trial court denied the motion, and Apache and APA appealed. *Apache Corp.*, 2023 WL 3511262, at *2.

On appeal, Apache and APA asserted that the fraudulent transfer lawsuit was "based on or in response to" their exercise of free speech because it was "factually predicated" on the press release. *Id.* at *4. In affirming the trial court's denial of the TCPA motion to dismiss, the Eastland court noted that other courts of appeals have frequently made a distinction between claims that are "based on" a communication and claims that are "based on" conduct. *Id.*; *see ML Dev, LP*, 649 S.W.3d at 625; *Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 794–95 (Tex. App.—Fort Worth 2018, pet. denied); *see also Pacheco v. Rodriguez*, 600 S.W.3d 401, 410 (Tex. App.—El Paso 2020, no pet.) ("[W]hen a claim does not allege a communication, and is instead based on a defendant's conduct, the TCPA is not implicated."). Noting that "there is a difference between communication that is part of the claim itself and communication which merely serves as evidence in support of a claim," the court stated,

> In this case, [a]ppellees' pleadings reference the press release somewhat extensively in their statement of facts. However, the claim could also be stated without any reference to the press release whatsoever, and the press release is not essential to those claims. Instead, [a]ppellees' claims are based on [a]ppellants' *conduct* in transferring certain assets from

12

> Apache to APA. . . . The references to the press release in [a]ppellees' pleadings merely point to evidence in support of their fraudulent transfer claim. The press release itself is not a part of the claim.

*Apache Corp.*, 2023 WL 3511262, at \*5. Concluding that the appellees' claims were not "in response to" the press release, the court stated that the "[a]ppellees' claims are in response to (or reaction to) the alleged fraudulent transfer of assets, not to the press release which announced those transfers." *Id.* at \*5–6. The "mere sequence of a communication, followed by a lawsuit that relates in some way to the communication" is insufficient to establish that a claim is "in response to" the communication. *Id.*

In *Cweren*, the appellants—a lawyer and a law firm—challenged the trial court's denial of their TCPA motion to dismiss claims by the appellees—former clients of the appellants. 2023 WL 2977755, at \*1. The appellants argued that the appellees' suit against them in district court for negligence, gross negligence, breach of fiduciary duty, and abuse of process "is based on or is in response to [the appellants'] right to petition" because the appellees' suit was in direct retaliation to the law firm filing suit in county court against them to collect allegedly outstanding fee amounts. *Id.* at \*2–3, 14. Rejecting that argument, the First Court of Appeals held that the "appellees' suit is not based on or in response to appellants' asserted communications in the county court suit, i.e., the filing of the county court suit, the serving of the county court suit on appellees, and the 'winning' of a motion for sanctions in the county court." *Id.* at \*14. Rather, "appellees' suit is based on appellants' failures to act, breaches of the

13

standard of care, conduct, and misrepresentations, virtually all of which allegedly occurred before the county court suit was filed." *Id.* Therefore, it held that the appellants had not shown by a preponderance of the evidence that the appellees' claims were based on or in response to the appellants' exercise of their right to petition and that the appellants' TCPA motion to dismiss was properly denied. *Id.* at *16.

Here, Newstream contends that the first numbered paragraph in Appellees' amended pleadings "made clear that the Rule 11 Settlement Agreement, the written terms and agreements contained therein, and the negotiations that le[d] to such agreement are 'essential facts' to [Appellees'] breach of fiduciary duty claims":

> [Appellees] . . . are forced to seek redress . . . because [Newstream] has sold the final real estate asset of the company to its affiliate, having first secured approval from the majority member [Silk] by promising a preferential distribution from the real estate sale proceeds without any provision for like kind distribution to [Appellees] or any other minority shareholders, all in exchange for [Silk's] non-suit of live claims against [Newstream].

Newstream argues that all of these allegations are "based on and in response to" the Rule 11 agreement and its written terms. Newstream further notes that the Rule 11 agreement was attached to and referenced or mentioned in at least nineteen paragraphs of Appellees' amended pleadings. Finally, Newstream contends that the Rule 11 agreement is "an essential fact" to Appellees' claim regarding an alleged "improper interested transaction" and their claim regarding an alleged improper use of Company assets.

14

Appellees respond that the breach of fiduciary duty claim arose not from the entry of the Rule 11 agreement itself, but rather from Newstream's conduct in obtaining approval of the interested transaction from the majority member Silk in exchange for granting Silk a preferential position in the Plan of Distribution—all in violation of the Company's Operating Agreement. Appellees point to their pleadings as proof that their allegations are based on improper conduct: "In this case, [Newstream] engaged in an interested transaction by selling the Property to [Newstream's] affiliate without the approval of a truly disinterested member and without determining whether the sale was objectively fair to the Company and by extension its members including [Appellees]." And Appellees reference their allegations that Newstream improperly elicited Silk's acquiescence to the "interested transaction" without ever making a showing of the transaction's objective fairness to the Company in exchange for Silk "ratif[ying] th[e] transaction to gain an unlawful distribution and to collect on the Company's outstanding debts to Silk."

Stating that "all of the Appellant['s] prior bad acts were engaged in prior to the execution of the Rule 11," Appellees further contend that:

- Appellees were a part of the Company and entitled to a pro rata distribution of their investments pending the final sale of the Property;

- Silk sought to remove Newstream due to its "gross negligence, fraud, theft, willful misconduct, and/or misappropriation of funds";

- Silk did not ultimately remove Newstream;

15

- After Newstream was not removed, Newstream proposed to sell the Property, including the final parcel, and distribute the proceeds to the Company's members;

- The Property's sale was memorialized in the Rule 11; and

- Appellees were not a party to the Rule 11.

Therefore, Appellees believe that the "culpable omission" on which their claims are based occurred "prior to and independent of" the entry of the Rule 11 agreement.

In determining whether Newstream satisfied its burden of proving that its claims fell within the scope of the TCPA, we consider the pleadings and affidavits that state the facts on which liability is based. *See David H. Arrington Oil & Gas Operating, LLC v. Wilshusen*, 630 S.W.3d 184, 190 (Tex. App.—Eastland 2020, pet. denied) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a)). Here, Appellees' claims are not "in response to" or in reaction to the Rule 11 agreement, but rather in response to the alleged breach of Newstream's fiduciary duties. *See Apache Corp.*, 2023 WL 3511262, at *6. The mere sequence of Appellees' claim—where it followed the Rule 11 agreement—is insufficient to establish that the breach of fiduciary duty claim is "in response to" the filing of the Rule 11 agreement. *See id.* at *6. While the pleadings reference the Rule 11 agreement, the breach of fiduciary duty claim could also be stated without any reference to the Rule 11 agreement; the reference to the Rule 11 agreement in Appellees' pleadings merely points to the Rule 11 agreement as some evidence in support of the claim. *See id.* at *5; *see also Harrell v. Smith*, No. 05-22-

16

00242-CV, 2022 WL 17335686, at *5 (Tex. App.—Dallas Nov. 30, 2022, no pet.) (mem. op.) ("Simply alleging conduct that has a communication embedded within it does not create the relationship between the claim and the communication necessary to invoke the TCPA."). And although Appellees' breach of fiduciary duty claim may relate to the Rule 11 agreement, it does not attack the fact that the Rule 11 agreement was filed nor is it based on or in response to the filing itself. Instead, the gravamen of Appellees' claim is Newstream's alleged role in selling the Company's final property asset and failing to split pro rata the proceeds as provided by the Company Agreement. *See Cweren*, 2023 WL 2977755, at *14; *see also Harrell*, 2022 WL 17335686, at *5 ("Rather[,] Smith's claims are factually predicated solely on Harrell's alleged conduct of willfully violating the restated company agreement.").

Under a de novo standard of review, we cannot conclude that the Rule 11 agreement is either the "main ingredient" or "fundamental part" of the breach of fiduciary duty claim or that the breach of fiduciary duty claim is in "answer" to the Rule 11 agreement. *See Ernst & Young, LLP*, 2023 WL 4239350, at *8. Therefore, we conclude that Newstream failed to show by a preponderance of the evidence that the TCPA applied to Appellees' claim. *See McLane Champions, LLC*, 2023 WL 4306378, at *4 ("First, the moving party must show by a preponderance of the evidence that the TCPA applies to the legal action against it."). Because Newstream did not establish that the TCPA applied to the claim, the burden never shifted to Appellees to establish by clear and specific evidence a prima facie case for each element of their claim, and

17

therefore, the trial court properly denied the TCPA motion to dismiss. *See Newstream Hotels & Resorts, LLC v. Abdou*, No. 02-21-00343-CV, 2022 WL 1496537, at *4 (Tex. App.—Fort Worth May 12, 2022, pet. denied) (mem. op.) ("Because Appellants did not establish that the TCPA applied to Appellees' amended claims, the burden never shifted to Appellees to establish by clear and specific evidence a prima facie case for each essential element of their claims, and the trial court properly denied the TCPA motion."). Accordingly, we overrule all of Newstream's issues.

## IV. CONCLUSION

Having overruled all of Newstream's issues, we affirm the trial court's order denying the TCPA motion to dismiss.

/s/ Dana Womack

Dana Womack
Justice

Delivered: August 31, 2023

18